## FORD *vs.* HOLMES.

1. The ordinary has no jurisdiction to order the representatives of a deceased person to execute title to land, except on the petition of the holder of a bond for titles, who has complied with its conditions. Code, § 2549.

2. When letters purporting to be signed by the complainant, containing admissions derogatory to his title to the land in dispute, are put in evidence by the defendant, on *prima facie* evidence of the handwriting, the complainant is not a competent witness to disprove their genuineness, if the title on which he relies has its root in an alleged contract made by him with a person who is dead at the time of trial, the defendant being in possession of the premises under one or more of the heirs of the deceased, and the main question in controversy being whether the deceased was seized of the land at the time of his death, or whether he had passed title, legal or equitable, to the complainant. Compare 44 *Ga.*, 46.

3. "Permissive possession cannot be the foundation of a prescription, until an adverse claim and actual notice to the other party." Code, §2679. This applies equally to seven years with color, or twenty years without. One holding under an executory contract of purchase, written or parol, has a permissive possession only, until his part of the contract is performed, or until a conveyance is executed by his vendor.

4. That, pending the trial, one of the jurors went from and to the court, each day, in the same buggy with the prevailing party, is no ground for a new trial—the two being neighbors residing in the country, and having, before the opening of the term, pre-arranged that mode of attending the court for economy and convenience, and it appearing that they had no conversation touching the case while the trial was in progress.

5 The brief of evidence is amendable at any time while the motion for a new trial is pending, especially where the omitted evidence is in writing and of file—such as the answers to interrogatories.

6. If one of the counsel for the movant be absent without leave, when a motion for new trial is called in its order, the court may hear and dispose of the motion, though advised of an agreement entered into

between the absent counsel and the attorney of the opposite party for postponing the hearing until some time in vacation. The court is not bound to conform to the private arrangements of counsel in the conduct of business; certainly not where such arrangements contemplate—not a continuance from one term to another, but from open court to chambers.

7. In revising the motion for a new trial, the judge may make such notes in the margin as he thinks proper, in explanation, or even in vindication of his rulings.

Administrators and executors. Ordinary. Title. Witness. Evidence. Prescription. Jurors. New trial. Practice in the Superior Court. Before Judge HALL. Pike Superior Court. April Term, 1875.

On the 9th day of February, 1874, the complainant, Ford, filed his bill against the defendant, Holmes, alleging that about the year 1850 or 1851, he bought of his uncle, Castleberry, the south half of lot of land number three, in the eighth district of originally Monroe, now Pike county, containing one hundred and one and a quarter acres, more or less—went into possession thereof, and cleared a plantation and built houses therefor, and from time to time made payments thereon till about the year 1858 or 1859, when he paid up the whole amount due on said purchase; that owing to the fact that said Castleberry lived at a considerable distance from complainant, he failed to obtain a deed to said land, but that he had been continuously in possession of said land from the time of said purchase. That Castleberry died about the year ——, without having made him a deed, and that Holmes made an affidavit under the statute for evicting intruders, in the year 1873; that complainant made a counter–affidavit, and soon after defendant, commenced an action of ejectment against him, and he being ignorant of the law and the nature and character of suits, thought it was part and parcel of the first proceeding. That he employed D. N. Martin, Esq., giving him a copy of the ejectment suit which

had been served on him. That said attorney filed a plea at the first term (April term, 1873), in the ejectment case, not knowing that there was such a proceeding as the summary process by affidavit; that at the adjourned term, held in July, said case being called and no one being present to represent complainant, the counter-affidavit was dismissed for insufficiency or informality, and an order taken that the sheriff proceed to dispossess complainant, and that the sheriff went to his home while he was absent, and put his family and all his goods out of his house. That complainant then made an affidavit to have defendant turned out as an intruder, and defendant made a counter-affidavit. That complainant then commenced a proceeding before the ordinary of said county to compel said Holmes and his wife, M. C. Holmes, and C. D. Castleberry, widow of William Castleberry, as administrator and administratrix of said Castleberry, to make a title to complainant, conveying said land to him; that at the hearing before said ordinary, at the November term, 1873, said persons failing to show cause why they should not make title, the said ordinary passed an order requiring them to make a title to complainant. Complainant also alleged that defendant was committing waste, having cut down the timber on thirty acres of said land, and was still cutting and hauling it off and cording it along the Macon & Western Railroad, about one mile from Milner, for the purpose of selling the same—that he was also hauling it to Barnesville. That defendant was insolvent, and the damage was irreparable. Complainant prayed an injunction, rest.aining him from cutting and selling the wood, until the right of possession could be adjudicated, and waived answer.

Complainant filed an amendment to his bill, on the 23d of May, 1874, alleging that he was apprehensive that the proceeding by affidavit to evict the defendant was not as full, complete and adequate a remedy as the case required, and to avoid a multiplicity of suits by bringing an action of

ejectment, or some other proceeding, to recover the premises in dispute, and for the purpose of shortening litigation, he prayed that the proceeding by affidavit, and also an action of trespass which complainant had commenced against said Holmes for damages, might be enjoined till the trial on said bill, and that both of said cases might be tried with said bill, as part and parcel of the same; that said land be decreed to be the property of complainant, and that possession be given to him by decree of the court, and that he might be decreed certain special relief (unnecessary to be set forth), and such other relief as the nature of his case demanded.

The defendant answered the original bill, in brief, as follows :

The allegations that complainant bought said land from William Castleberry, that he paid any of the purchase money, that he cleared any plantation on the same, and that he built any house of value thereon, are untrue. Castleberry lived some distance from the property. Ford entered thereon without his knowledge or consent, and subsequently remained there by his permission. Early in 1873, defendant, as agent of Mrs. C. D. Castleberry, sued out a warrant to dispossess complainant; the latter filed a counter-affidavit, setting up no title in himself, but as the pretended agent of Mrs. Castleberry. This proceeding was returnable to the April term, 1873. Ejectment against complainant was brought to the same term by defendant, his wife, and Mrs. Castleberry. The issue made on the first proceeding was reached at the adjourned term, and resulted in a dismissal of the counter-affidavit. The complainant was soon thereafter dispossessed under order of court, and the defendant, as agent as aforesaid, placed in possession. It may be true that the proceedings before the ordinary were had as set forth in the bill, but submits that if any such order was passed, as is alleged, it is void, as neither this defendant nor Mrs. Castleberry was administrator or administratrix upon the estate of Castleberry, deceased. Mrs. Castleberry as

the widow, and the wife of this defendant as the daughter, are the heirs-at-law of said Castleberry. Admits cutting timber and carrying it to the railroad to sell, but denies that he was committing waste, as he was simply cutting off the wood where he was preparing to cultivate the land, none of which complainant had ever prepared for cultivation. Defendant is making said land far more valuable, having full confidence in the title of said heirs, and is erecting comfortable residences and outhouses thereon, and is making available a valuable piece of property. Defendant is perfectly solvent, and is ready to secure complainant in any damages he may recover.

To the amended bill he answered in substance as follows:

As to all the matters set forth in the amendment, complainant has an adequate remedy at law. The charge that he has damaged complainant $500.00, in evicting him, is untrue, as also are the allegations as to the waste, the value of the rent, the payment of the purchase money by complainant, etc.

The injunction was granted, requiring defendant to give bond in the sum of one thousand dollars, provided complainant would file a bond for the same amount to defendant, to secure him against damages on account of the injunction, which the complainant was unable to do.

It is only necessary to state that the evidence for complainant tended to show a parol sale of the land to him by Castleberry, and payment therefor. The only written evidence of any such transaction were two letters from Castleberry to Samuel Ford, the father of complainant, the first dated January 20, 1851, in which he stated that he thereby gave to complainant the privilege, under contract and sale, to go on and improve the place to suit him, and that such letter should be as binding on him as any bond for title; that he had been offered $600.00 for the place, but he would not ask complainant more than $500.00, perhaps not so much; that he had invariably refused to sell to any one except said Samuel or his said son; that Samuel or complainant

could hold this letter, which would be good in case of death before they could have a further interview on the land trade ; that he desired complainant to have the land, and at the same time did not wish to ask him an unreasonable price.   In his second letter he stated that if Samuel Ford, or his son, complainant, could sell his Butts county land for $600.00, he would only charge the latter $400.00 for the place which he had bargained to him.

It appeared that complainant was the nephew of Castleberry, that he had taken possession of the land in 1850 or 1851, and had so remained until evicted by defendant in the latter part of the summer of 1873 ; that Castleberry had died in 1865.

There was evidence to show that complainant had sold the Butts county farm for $900.00, and that he had paid Castleberry for the tract in controversy, though on the latter point it was indefinite and unsatisfactory.

The defendant introduced two letters from complainant to Castleberry, in the last of which, dated June 6th, 1862, he stated that he had concluded to take the lot in Upson county ; that he was satisfied the land in controversy would be the best bargain of the two, but times were so "tight" he would not he able to pay the price he (Castleberry) wanted for the latter.

These letters were commenced "dear uncle," but to whom addressed was not disclosed.

The jury found for the defendant.    The complainant moved for a new trial on the following grounds :

1.  Because the court erred in rejecting a record from the court of ordinary of the county of Pike, consisting of a petition by complainant for a rule *nisi* against said defendant, C. D. Castleberry and M. C. Holmes, calling on them to show cause why they should not make a deed to complainant to the south half of lot of land No. 3, in the 8th district of originally Monroe, now Pike county, the rule *nisi* prayed for in said petition, and the judgment and order of the ordinary of said county requiring said parties to make the deed to complainant to said land.

Ford vs. Holmes .

Judge Hall added in the margin opposite this ground, "In the petition offered, it was not stated that Ford had a bond for titles, nor was a copy of the bond exhibited to the petition, as required by statute, nor was there an offer to prove that it was exhibited to the ordinary."

2. Because the court erred in refusing to allow complainant to testify that he did not write two manuscripts presented by defendant's counsel purporting to be letters to his uncle, there being no name mentioned, and in allowing said letters to go to the jury after having presented the signatures to the witnesses, Mrs. Thornton and S. J. Ford, who testified that they did not think they were in the handwriting of complainant, and only two witnesses testifying that the signatures "looked like" the writing of complainant.

3. Because the court erred in charging the jury as follows: "But if you do not believe plaintiff has paid for the land, then, whether he has a bond for titles or not, you should find for defendant, unless some other reason is shown why plaintiff has a superior claim over defendant to the possession of the land."

4. Because the court erred in charging the jury as follows: " Before possession for twenty years can give title, it must appear that the possession was adverse, that is, that the person claiming to have held adversely did not go into possession under the person asserting title, but held adversely to such person; for if a holding is by permission, no prescriptive title can arise from such holding until notice of an adverse claim. Therefore, in order to authorize the plaintiff to recover on his twenty years' adverse possession, it must appear that he was in possession twenty years prior to Holmes' entry ; that his possession was adverse to Castleberry, that is, that he did not go into possession by permission of Castleberry, or, if he set up an adverse claim, that he gave notice of it to Castleberry ; for if he went into possession under an agreement to purchase from Castleberry, his possession under the purchase does not, without notice of an adverse holding, ripen into a title."

Ford *vs.* Holmes.

5. Because the court erred in charging the jury as follows: "Seven years adverse possession, under written evidence of title, gives title by prescription. An instrument in writing admitting a sale of land, and agreeing to make titles, although it be in the form of a letter addressed from the seller to the buyer, is a written evidence of title, and seven years adverse possession under such written evidence of title, gives a title by prescription; but whilst the buyer might set up a holding under such written evidence of title as a prescriptive title as against any one else, yet the buyer cannot set up such holding as a prescriptive title against the seller—against the person who sold to the buyer, and under whom the buyer went into possession. So in this case, if Ford bought of Castleberry, and took from him a written acknowledgement of the sale, and went into possession under his purchase from Castleberry, then his possession was not adverse to Castleberry or to his heirs, and such possession does net ripen into a title."

6. Because the defendant went home in the same buggy with W. C. Hood, one of the jury, and returned with him in the same way the next morning, after the case had been submitted to the jury, and while the trial was pending, after which said juror was sworn by defendant as a witness in said case.

As to the last ground, it was shown that the defendant and Hood had arranged, before court convened, to go to and from home together in the same buggy during the term, for convenience, as they lived near together and some distance from the court-house; that it was known to complainant that they went to and from court together during the term, as he saw them.

The motion was overruled and complainant assigned error upon each of the grounds taken, and upon the further ground that the court erred in allowing the interrogatories of Mrs. Castleberry to be attached to the brief of evidence at the time the new trial was refused, and more than two years after the evidence was agreed upon. And upon the

further ground that the court erred in passing upon the motion at the October adjourned term, in the absence of Mr. Martin, of counsel for complainant, he having entered into an agreement in writing with counsel for defendant, that an order should be taken setting the case for January 2, 1878, so as to enable Mr. Martin to be present.

Upon this assignment the judge states that Mr. Martin was not absent with leave; that when the motion was reached, Mr. Hunt, of counsel for the defendant, stated that he would agree that the motion be heard in vacation; that he replied that the motion had been set down twice or thrice for a hearing in vacation, and when the day arrived some paper was lost and the hearing postponed; that he was willing to pass the motion for the term, but would not appoint another day in vacation. That Mr. Hunt then insisted upon a hearing at that time, and Mr. Redding, as associate counsel with Mr. Martin, represented the complainant.

D. N. MARTIN; J. F. REDDING, for plaintiff in error, cited, on judgment of court of ordinary, Code, §2246; 20 *Ga.*, 581; 36 *Ib.*, 402; 14 *Ib.*, 323. On conduct of juror, 34 *Ga.*, 379; 11 *Ib.*, 203; 40 *Ib.*, 150; 25 *Ib.*, 494; 38 *Ib.*, 216. On adverse possession, Code, §§ 2389, 2678, 2689; Cobb's Dig., 559, 560, 563, 564; acts of 1851–'52, 238; acts of 1855–'56, 233; 4 *Ga.*, 308; 44 *Ib.*, 576, 607; 15 *Ib.*, 545.

J. A. HUNT, for defendant, cited Code, §§2549, 2550, 3854.

BLECKLEY, Justice.

1. As to the jurisdiction of the ordinary to require the representatives of Castleberry to execute a title to Ford, the case is governed by section 2549 of the Code, which reads as follows: " If the intestate, during his' life, executed a bond to make titles to land, and dies without making such titles, the holder of such bond, after having complied with its conditions, may apply to the ordinary having jurisdiction over the estate, for an order requiring the administra-

tor to execute the titles according to the terms of the bond, in all cases annexing to his petition a copy of the bond." This is the only provision of the Code which empowers the ordinary to interfere where the vendor is dead and the vendee alive. Section 2551 applies where the vendee is dead and the vendor alive; and, as enlarged by the act of 1866, this section may be invoked, either where there is a bond for titles, or where the purchase money has been paid by the vendee before his decease. A living man may be called on in behalf of the heirs of a decedent, with or without bond, but the representatives of a deceased man are not to act at the bidding of the ordinary in passing title out of the estate, except where there is a bond. Other cases are for a court of chancery, or for the superior court under its chancery powers. Let it be conceded that a mere letter may be treated as a bond for titles, still it is apparent that the proceeding before the ordinary in the present case, was not based on the letter from Castleberry to Ford. No copy of the letter was attached to the petition, nor was there any recital of, or reference to such a document in the petition itself. Moreover, it is not pretended that the representatives of Castleberry complied with the order of the ordinary. No title was made in pursuance of the order, and unless that had been done, even if the order were valid, the rejection of the proceedings before the ordinary as evidence, could hardly be held to be erroneous. It is not the scheme of the statute that the judgment of the ordinary shall pass the title, but that compliance with the judgment is to be enforced, if not voluntarily accorded, and a conveyance actually executed. Both the judgment of the ordinary and a deed from the representatives of the estate, are contemplated as necessary. A further difficulty under which the complainant labored was, that he proceeded before the ordinary against certain persons as the administrators of Castleberry, and it is denied in the record that they were administrators, or that some of them were. But the conclusive ground for the rejection of the record from the court of

ordinary was, that the proceeding in that court was not based upon any bond for titles, so as to give the court jurisdiction of the subject matter.

2. The brief of evidence is referred to by Judge Hall as requisite to modify the statements of fact in the second ground of the motion for a new trial, and the brief makes a clear case for the admission of the letters which purport to have been written by the complainant. There was *prima facie* evidence that they were in his handwriting. Was he a competent witness to disprove their genuineness? Castleberry, to whom they seem to have been written, being dead, and the main question in the controversy on trial being, whether he died seized of the premises in dispute, or whether he had passed title, legal or equitable, to the complainant, the force of the letters lay in the admissions which they contained. If the letters were genuine, these admissions were made to the deceased, and doubtless influenced his action; at least, they were of a nature calculated to influence it. He could not be heard, being dead; and to hear the complainant in denial of written admissions apparently made to the deceased, would be as objectionable as to hear him in denial of the contract apparently made with him. If the instruments were deeds instead of letters, the complainant would certainly be incompetent to prove them a forgery; and, as these instruments, though letters, are important evidence on the line of disclaimer, it seems to us that the same principle applies. This is a much stronger case for holding the rule of incompetency than was the case in 44 *Ga.*, 46.

3. The court charged the jury, that if the complainant had paid the purchase money he was entitled to a decree. The parts of the charge excepted to were thus qualified, and rested on the hypothesis that the purchase money was unpaid. Viewed in this light, the correctness of the charge, in so far as it was adverse to the complainant, cannot be doubtful, and the third head note needs no expansion. The finding of the jury evinces that in their opinion the

land had not been paid for, and there was no offer by the complainant to pay for it now. It may be well to suggest, by way of caution, that there may be doubt whether the twenty years prescriptive term can be urged in any case where the seven years term would not be equally effective, until twenty years shall have run in favor of the possession since the Code took effect—that is, January 1st, 1863. Possibly there is no authoritative ruling that there was a twenty years limitation on land suits prior to the Code, except under an old statute which was apparently confined to cases in which the period could be counted from the passage of the act.

4, 5, 6, 7. It appeared that, though the defendant and the juror rode together, they had no conversation touching the case while the trial was in progress. How they came to unite in passing to and from the court was explained. The brief of evidence was certainly amendable. To suffer counsel to adjourn a case from term to vacation would be quite impracticable. In the argument before us it was urged that Judge Hall had no right to add marginal notes in revising the motion for a new trial. We see no objection to the practice. The judge may both explain and vindicate his rulings. By doing so he may subserve the cause of truth and justice.

Judgment affirmed.