BRADSHAW, RESPONDENT, *v.* DEGENHART, APPEL-

LANT.

[Submitted January 31, 1895.    Decided February 4, 1895.]

VERDICT—*When sustained on appeal.*—Where the verdict of the jury has been re-
viewed by the court below in determining the credit to be given to the wit-
nesses it will not be disturbed on a'peal.

TRIAL—*Misconduct of juror—Burden of proof.*—Whenever a juror has been guilty,
of any such impropriety as to accept, during the progress of a case, liquor or
tobacco, or any such favors, at the expense of a litigant to the suit on trial, or
his attorneys, the burden of proof is upon the prevailing party to satisfy the
court that it can be safely assumed the mind of the juror was not improperly
influenced, and that the party's conduct in no way operated upon him to cor-
rupt his verdict.

SAME—*Same—Accepting refreshments at expense of successful party.*—Where the
defendant in an action joins with the jurors trying the case in drinking at the
plaintiff's expense, but does not bring the matter to the attention of the court
until after verdict is rendered for the plaintiff, public policy alone does not
require that the verdict be set aside and the case be remanded for a new trial
in the absence of a showing of misconduct of the jury which did or could,
under all the circumstances, have affected the rights of the defendant.

*Appeal from Third Judicial District, Deer Lodge County.*

ACTION to try right to use of waters.    Defendant's motion
for a new trial was denied by DURFEE, J.    Affirmed.

Statement of the case by the judge delivering the opinion:

This action was brought to try the right to the use of the
waters of Spring or Alkali Slough creek of Deer Lodge, now
Granite, county, and for an injunction to prevent the party, to
whom the right of the use of said waters does not belong, from
diverting the same.    There was a trial by jury.    A general
verdict was rendered for plaintiff.    The court adopted the ver-
dict of the jury, and made findings of fact to the effect that on
March 1, 1883, the plaintiff appropriated fifty inches of waters
of Spring creek, and continuously used the same for irrigation
and domestic purposes from that time up to the commence-
ment of this action, except when deprived of the use thereof
by the acts of the defendant; that during the years 1890
and 1891 the defendant diverted the said waters from the
plaintiff's use; that plaintiff is the owner and entitled to the
use of all of the waters of Spring creek, to wit, fifty inches;
that the defendant should be restrained from diverting any of

the waters of Spring creek. A judgment was rendered in accordance with the verdict and findings in plaintiff's favor. The defendant moved for a new trial, which was denied him, and, from the order refusing the same, an appeal was taken.

*Forbis & Forbis,* for Appellant.

The following cases are cited in denunciation of the practice of jurors accepting of the hospitality of either party litigant: *Palmer* v. *Railroad Co.,* 2 Idaho, 290; *Burke* v. *McDonald,* 2 Idaho, 1022; *Johnson* v. *Hobart,* 45 Fed. Rep. 542; *Mobile etc. R. R. Co.* v. *Davis,* 130 Ill. 146; *Vose* v. *Muller,* 23 Neb. 171; *Veneman* v. *McCurtain,* 33 Neb. 643; *People* v. *Myers,* 70 Cal. 582; *Stafford* v. *Oscaloosa,* 57 Iowa, 748; *Sacramento etc. Co.* v. *Showers,* 6 Nev. 291; Thompson and Merriam on Juries, §§ 372, 374, 376.

*F. W. Cole,* and *H. R. Whitehill,* for Respondent.

The rule now generally followed by the courts is, that the mere fact of drinking liquor by a juror is not of itself sufficient ground to set aside a verdict, unless some injury has been done. (*Territory* v. *Hart,* 7 Mont. 489; *Territory* v. *Burgess,* 8 Mont. 57.) In the case at bar, there being no attempt whatever shown on the part of the respondent to seek or influence the jurors improperly, and no injury having resulted from the verdict of the jury, the court below very properly overruled the motion for a new trial. (Thompson and Merriam on Juries, § 378; *Pittsburg R. R. Co.* v. *Porter,* 32 Ohio St. 328; *Arizona etc. Co.* v. *Copper Queen Min. Co.,* 7 Pac. Rep. 718; *People* v. *Lyle,* 4 Pac. Rep. 977; *Hilton* v. *Southwick,* 17 Me. 303; 35 Am. Dec. 306; *Goodright* v. *McCausland,* 1 Yeates, 372; 1 Am. Dec. 306; *Carter* v. *Glass Co.,* 85 Ind. 180.) Courts will not enforce any rule so as to put parties to suits under the restraint of denying to jurors the usual and customary entertainment and civility. (Thompson and Merriam on Juries, § 375; *Coleman* v. *Moody,* 4 Hen. & M. 1; *Tripp* v. *Commissioners,* 2 Allen, 556; *Carlisle* v. *Sheldon,* 35 Vt. 440; *Eakin* v. *Canal Co.,* 21 N. J. L. 558.) The appellant, by keeping silent and failing to interpose an objection to the jurors being treated by the respondent, or in call-

ing it to the attention of the court and excepting to such irregularity before the case was submitted to the jury, thereby consented to the irregularity, waived his objection, and is now estopped from urging it is as a ground for new trial. (Thompson and Merriam on Juries, §§ 378, 427, 428; Hayne on New Trial and Appeal, § 27; *Kinna* v. *Horn,* 1 Mont. 599; *Salton* v. *Glen,* 42 Ga. 64; *United States* v. *Salentine,* 8 Biss. 404; *Taber* v. *Judd,* 62 N. H. 88; *Thiele* v. *Koster,* 63 Cal. 241.)

HUNT, J.—The appellant makes two points: 1. That the evidence was insufficient to sustain the verdict of the jury; and 2. Misconduct of the jury. Upon the first point, after reading the testimony of the many witnesses produced upon the trial, the truth of the admission of counsel for the appellant is confirmed, that there was a substantial conflict in the evidence upon the material issues in the case. The verdict is fully supported by the evidence. In such a case, by the well-established precedents of this court, the verdict of the jury, where it has been reviewed by the court below, in determining the credit to be given to the witnesses, will not be disturbed.

Upon the ground of misconduct of the jury, the affidavits show that by permission of the court, before the arguments of counsel, the jury were allowed to visit the irrigation ditch in question, and, for the purpose of viewing the ground, were gone the better part of two days. While the jury were on their way to view the premises, in charge of the undersheriff, Thomas F. Ward, and while they were at the town of Drummond, several jurors were invited by the plaintiff, William C. Bradshaw, to drink or smoke with him. The facts and circumstances are set forth in the affidavit of the undersheriff, who had charge of the jury, and who swears as follows:

"That it was agreed between the parties to said suit that each should pay one-half of the costs and expenses of such visit to the said premises, and affiant was instructed by the attorneys of the respective parties that all the expenses of transportation, food, and entertainment would be so paid, and this affiant did collect such costs and expenses in equal proportions from the plaintiff and defendant; that while affiant, with the

said jury and others, was at the town of Drummond waiting for the train to convey them to Philipsburg, affiant was invited by W. C. Bradshaw, the plaintiff, to take a drink with him; that they went to the saloon of Samuel Ritchie, and all the persons in said saloon at that time were also asked by Bradshaw to drink; that among the number so invited were some of the said jurors, but the names of whom and the number thereof affiant does not now remember and does not know; that the defendant, L. C. Degenhart, and some of his witnesses were among the number; that, altogether, about twenty-five persons were present and were treated at the same time by the said Bradshaw; that there was a general invitation by Bradshaw to all persons present to drink, and no special invitation was given by said Bradshaw to the jury or any particular jurymen; that nothing was said or done by the said Bradshaw for the purpose of influencing the verdict of the jury at the time of said treat; that by agreement of the attorneys of the respective parties the said Degenhart and Bradshaw were, by an order of the court, permitted and authorized to accompany affiant and the jury to view the said premises, and, except when viewing said premises, the jury were, by agreement of the parties and the instruction of the court, permitted to separate, and were not kept together or under control of affiant."

The plaintiff, Bradshaw, also filed an affidavit in which he corroborates Ward, and says that, by permission of the court, he and the defendant accompanied the jury. That by agreement they were permitted to separate, and "that while the parties, the officer in charge of the jury, the jurors, and many of the persons who had been witnesses in the trial of said cause, and other persons, were at the town of Drummond awaiting the departure of the train for Philipsburg, this affiant did invite the officer in charge of said jury to take a drink with him; that the said officer and some of the jury also joined them; that the defendant, L. C. Degenhart, and some of his witnesses, as well as other persons, were invited by affiant, and all, to the number of about twenty-five persons, were treated to liquor or cigars at affiant's expense; that all of said jurors did not participate in said treat, but affiant believes that two of

them did join, to wit, Beacock and McMahon; that nothing was said or done by this affiant for the purpose of influencing said jurors in their verdict, and affiant believes, and so states, that no juryman was influenced in his verdict by reason of said treat at affiant's expense; that affiant is informed and believes that jurors E. Girard, Joseph Richards, P. C. Patterson, F. W. Dunton, Thos. Blakeley, and Tobias Schurtz, James Beaton, Lars Beck, and Peter Johnson, and Ed Newman were not present, and did not participate in said treat."

Affidavits were filed by jurors Beaton, Dunton, Newman, and Beck, to the effect that they were not present, did not drink with, nor were they, or any of them, treated by the said Bradshaw at the time mentioned. The jurors Dunton and McMahon swore that the jurors Patterson, Schurtz, Johnson, Girard, Richards, and Blakely were not present and did not drink with or at the expense of plaintiff, Bradshaw. John McMahon, a juror, by affidavit admits that he took a cigar at the expense of plaintiff, Bradshaw.

Beacock was the one juror who evidently did take a drink.

The mere fact that the jurors took the refreshment is, by itself, not enough to vitiate their verdict. (*Territory* **v.** *Hart*, 7 Mont. 489; *Territory* **v.** *Burgess*, 8 Mont. 57.)

The inquiry in this case involves the further element, however, of whether the verdict must be set aside because the jurors respectively smoked and drank *at the expense of the successful party.*

The rule adopted by many courts seems to be, that " where a juror has been treated, fed, or entertained by the successful party, or at his expense, a new trial will in nearly all cases be granted," upon grounds of public policy and without regard to any investigation into whether the verdict was right or wrong. (Thompson and Merriam on Juries, § 372, and cases cited.)

Thompson on Trials, section 2566, qualifiedly approves the general rule, by stating that the circumstance that the drink was furnished at the expense of the prevailing party or his attorney "will turn the scale against the verdict, unless it is shown that it was not intended to influence his action in the cause, and had no such influence on his mind." To sustain the rule without the qualification stated, the author cites the

learned opinion of Justice Garber, of Nevada, in *Sacramento etc. Co.* v. *Showers*, 6 Nev. 291, where it was decided, in 1871, that because jurors drank liquor at the expense of the prevailing party during a trial, either by design or inadvertence, in the presence or out of the presence of the bailiff, a verdict must be set aside.

To uphold the rule as limited, the author relies upon the case of *Railroad Co.* v. *Porter*, 32 Ohio St. 328, decided in 1877, where the court, after reviewing the earlier decisions, holds that "the mere fact of treating jurors by a party during the progress of a trial, so far evinces a purpose to influence them that, unexplained, it is held to be a ground for vacating a verdict rendered in his favor."

Under the rule as limited, it appears, therefore, that the burden of explaining that the treating was not done with the design of influencing the jurors is upon the party who paid for the refreshment.

We approve of the limitation, and have no hesitation in establishing the practice that whenever a juror has been guilty of any such impropriety as to accept, during the progress of a case, liquor or tobacco, or any other such favors at the expense of a litigant to the suit on trial, or his attorneys, the burden of proof is upon the prevailing party to satisfy the court that "it can be safely assumed" the mind of the juror was not improperly influenced, and that the party's conduct in no way operated upon him to corrupt his verdict. Indeed, we are inclined to hold that the rule without the limitation is sound, and that if a juror accepts a treat from a party to a suit without the knowledge or acquiescence of the opposite party, and no opportunity is given the opponent to bring the matter to the court's or judge's notice until the judge has charged the jury, or until after verdict is rendered, such misconduct on the part of a juror, when made the ground for a new trial, is enough to require the court to set aside a verdict upon the ground of public policy, and the necessity of the honest and impartial administration of justice.

But the case before us is not quite like any cited by either counsel, and is not to be wholly governed by the applications of any of the decisions referred to.

Here the jury, bailiff, and *the parties* were waiting for a train at a small town. The plaintiff, after asking the bailiff to drink, extended his invitation to all others present, including two jurors, the *defendant*, witnesses who were there and others who happened to be in the saloon. There is nothing tending to prove that the plaintiff sought the jurors or intended in any manner to influence any one who was present. The casual manner in which the treating was done negatives the idea of improper motive. Not a word was said about the case, and it does not even appear that the plaintiff had any conversation at all with the jurors.

Nevertheless, if the defendant had not been present and thus known of the conduct of the jurors, we should be inclined, as above stated, to follow the general rule that the mere fact that the jurors drank or smoked at plaintiff's expense would, in the fear of "possible improper motives," demand that the verdict be set aside. At least it would take a very strong showing to sustain the verdict of a jury in such a case.

But where a defendant himself so far forgets the proprieties of the relation which exists between a jury with a case on trial before them and a party to such trial as to not only drink with them but does so at the *plaintiff's* expense, we think he contributes to the misconduct of the jurors and of the plaintiff, and stands upon about the same footing, provided he makes no complaint before the court charges the jury, and in no manner seeks to have the error cured.

The learned counsel for appellant says that it was a very trying situation for the defendant, and that most men under like circumstances would have accepted plaintiff's hospitalities. We are not prepared to admit this contention, but assuming it is a correct observation of human nature, still, if, despite his better convictions, by moral weakness, or by intensity of his zeal to curry favor with the jurors, he was led into such conduct, his duty was plainly to lay the matter before his counsel to the end that the court might act in the premises. He was willing at the time to take the refreshment and speculate upon the chances of a verdict, and, now that he has lost, we are of the opinion he cannot plead the embarrassments of the occasion as sufficient excuse to relieve himself of an unfavorable decision.

By his knowledge of and active part in the conduct of the jurors, and by his silence when the matter might have been excepted to and guarded against, he must be held to have waived the point. (*Flesher* v. *Hale*, 22 W. Va. 44; *Davis* v. *Allen*, 11 Pick. 468; Thompson on Trials, § 2725.)

The trial judge in the exercise of his judicial discretion and sitting as a chancellor adopted the verdict which was only advisory, and made special findings in plaintiff's favor. We therefore decline to hold that the exercise of that discretion in sustaining the verdict was unwise; and, in the absence of a showing of misconduct of the jury, which did or could, under all the circumstances, have affected the rights of the defendant, public policy alone does not require that the case be remanded for a new trial.

The order denying the motion for a new trial is affirmed.

*Affirmed.*

PEMBERTON, C. J., and DE WITT, J., concur.

