# Louisville & Nashville R. R. Co. *v.* Turney.

## *Injury to Person on Track.*

### (Decided May 15, 1913.  62 South. 885.)

1. *Railroads; Persons on Track; Injury; Pleading.*—Where the action was grounded upon wanton injury and negligence after discovery of peril, pleas which did not show by specific averment that plaintiff was conscious of his imminent danger, were subject to demurrer.

2. *Same; Instructions.*—Where plaintiff admitted his contributory negligence, but set up the subsequent negligence of the company in injuring him while walking on a railroad track in an incorporated town, along the path customarily used by the public, a charge predicating a verdict for defendant solely upon the fact that, upon discovering plaintiff on the track, and his unconsciousness of the approaching train, the engineer blew his whistle and attempted to stop the train, ignored the duty of the company to have its train under reasonable control, and to keep a lookout for persons on track, and was consequently erroneous.

3. *Same; Jury Question.*—Under the evidence in this case the question whether the failure to have the train under control and to keep a lookout for persons on the track, in view of the locality and the known use of the track, was negligence, and if so whether it was wanton, were questions for the jury.

4. *Same; Burden of Proof.*—Under the evidence in this case it was proper to instruct the jury that the burden of proof as to freedom from negligence was upon the railroad company under the provisions of section 5473,.5476, Code 1907.

5. *Appeal and Error; Showing Error; Joint Assignment.*—Where the matter of overruling certain pleas is included in one assignment, the assignment is not sustained if anyone of said pleas were bad.

6. *Same; Harmless Error; Pleading.*—Error in sustaining demurrer to special pleas is not prejudicial where all the evidence admissible under such pleas was admissible either under the general issue or other special pleas to which demurrers were overruled.

7. *New Trial; Grounds; Conduct of Juror and Party.*—The fact that plaintiff boarded at the same place with two of the jurors, slept in the same room with them for several nights, and in the same bed with one of them, discloses such misconduct as to require the setting aside of the verdict and granting of a new trial, notwithstanding the association was not sought by either the plaintiff or the jurors, and that they had no improper motive, and testified that the trial was not discussed between them, as the relation was so intimate as necessarily to have influenced the verdict.

8. *Same.*—Where the successful party has treated, fed or entertained a juror, a new trial will be awarded on the grounds of public policy without regard to the probable effect of such conduct upon the verdict; but in the absence of any evil intent by the parties, mere casual meetings and exchange of ordinary civilities will not vitiate the verdict.

9. *Same; Motion; Requisite.*—Where the misconduct of the juror is instigated, promoted or shared in by plaintiff, the motion for a new trial, based on such misconduct, is not required to aver that defendant did not discover the misconduct complained of before the rendition of the verdict.

APPEAL from Morgan Circuit Court.

Heard before Hon D. W. SPEAKE.

Action by Luther Turney against the Louisville & Nashville Railroad Company for damages for injury while crossing the defendant's railroad track. From a judgment for plaintiff, and from the denial of its motion for new trial, defendant appeals. Reversed, motion for a new trial granted, and remanded.

Plaintiff was injured by defendant's passenger train near its station in the town of Falkville. This station, with the main track and two sidings, was located in the midst of the town, and within a few feet of a street crossing. On the side of the track opposite to the station are some storehouses, from which a pathway leads diagonally across the track, following the main track for a space, and onto the street on the other side. The town and vicinity is thickly populated, and this diagonal pathway is in almost constant use by a great number of people who pass over the track at this point; a circumstance known to the enginemen who were operating the engine that injured plaintiff. Plaintiff in-

tended to embark on the train as a passenger, and having made some purchases at the stores referred to, proceeded along the diagonal pathway towards the station, facing away from the direction the train was approaching. He knew that the train was coming, but apparently did not realize that he was on the same track with the train, and was engaged in counting the change needed for the purchase when struck, and did not hear nor heed the alarm signals given by the engineer a few feet before the engine reached him. The speed of the train was between 10 and 20 miles an hour, according to the varying opinions of witnesses, and the track was straight and clear for 2 miles.

According to the plaintiff's witnesses, the train was about 50 to 100 yards from him when he went on the main track, and about 15 feet from him when the alarm was blown. The engineer was sitting in his usual place and looking down the track. When the whistle was given for the board, plaintiff looked up and glanced at the train, but at once looked down again and did not again look up. He walked about 25 or 30 feet on the main line before he was struck. In reply to a question by a witness asked a few minutes after the accident as to what he meant by getting run over, plaintiff replied that he thought he was on the side track. Plaintiff himself testified that he knew the train was coming, but did not see it, and did not look up because he thought he was on the side track, and did not know the train was running on the track he was on. The engineer testified that plaintiff got on the track about 50 feet in front of the engine, and that he at once sounded the alarm and applied the emergency air brakes, and that he did not succeed in attracting plaintiff's attention until he was struck. He also testified that he did not reverse the engine, being unable to do so in time,

or as quickly as he could apply the air; but that he stopped the train as quickly as it could have been done, which was within about 150 feet of the point of collision. He further testified that the rules of the company require him to reduce his speed to 10 or 12 miles an hour in an incorporated town, but that he thought he was violating the rule on this occasion. He and the conductor estimated the speed of the train at the signal board 100 yards away at 20 or 25 miles per hour.

Count 1 is for subsequent negligence, counts 2, 3, and 4 for general simple negligence, and counts 5 and 7 for wanton, negligent, or intentional injury. The case was submitted to the jury on these counts, and on defendant's plea 1, which is the general issue, and the following special pleas:

(2) "For answer to counts 1, 2, 3, and 4, separately, defendant says plaintiff was guilty of negligence on his part which proximately contributed to the injuries complained of in this: That plaintiff attempted to cross the track of defendant as its train was running at a rapid rate of speed, and the place where he attempted to cross was in such close proximity to the engine that the same could not have been stopped by the engineer after his discovery of plaintiff's presence upon the track in time to have prevented injuring him, and defendant avers that plaintiff got upon said track and between the rails on which said engine was running, well knowing that said engine was approaching at a rapid rate of speed in full view of him, and in close and dangerous proximity to him, and was seen by him at the time he got between said rails, and without making an effort on his part to get beyond said rail, which he had ample time to do, and which he knew he had time to do, and thereby avoid being hit by said engine, but which he carelessly and negligently failed to do."

(9) "Furthermore answering counts 1, 2, 3, and 4, defendant says that plaintiff was guilty of negligence on his part, which proximately contributed to the injury complained of in this: That, after said alleged discovery of plaintiff's danger by defendant's servant, said servants in charge of said train gave notice of its approach by sounding the whistle and using all preventive efforts to stop said train, and defendant avers that at said time the said plaintiff had knowledge, and notice, and warning of the approach of said train and its dangerous proximity to him, and negligently and carelessly remained upon the track of defendant, and received the injuries complained of, without the engineer being able to prevent said injuries."

The following is charge 1, refused to the defendant: "If you believe from the evidence that, after the alleged discovery of plaintiff's danger by defendant's servants, said servants in charge of said train gave notice of its approach by sounding the whistle and using all preventive effort to stop said train, and that at the same time plaintiff had knowledge, and notice, and warning of the approach of said train and its dangerous proximity to him, but negligently and carelessly remained upon the track of defendant, and received the injuries complained of, without the engineer being able to prevent said injury, your verdict should be for the defendant."

Charge 1, given at request of plaintiff, is as follows: "(1) Gentlemen of the jury, I have just charged you at the request of defendant as follows: If any one of your number are not reasonably satisfied from the evidence that plaintiff is entitled to recover, you cannot find a verdict in favor of the plaintiff. This means, gentlemen, that you must all agree upon the verdict, but

[Louisville & Nashville R. R. Co. v. Turney.]

would not authorize you to find a verdict for defendant."

There was verdict and judgment for plaintiff for $10,500, and defendant moved for a new trial, and, among others, assigned the following grounds:

(5) "There was undue influence used by plaintiff upon two of the jurors in this cause in this: That, after the argument in said cause had been completed and the jury charged by the court, they retired about 10 o'clock to consider their verdict, and about 11:20 at night of Friday, Oct. 20th, the court discharged such jury under instructions until the next morning at 8 o'clock, and after they were discharged, and while said cause was pending before them for consideration, the plaintiff on said night slept in the room with two of said jurors, and one of them slept in the same bed with him.

(5½) "There was improper conduct on the part of the plaintiff and two of the jurors engaged in the trial of this cause in this: That, after the jury was impaneled and until the verdict of the jury was rendered in this cause, the plaintiff slept in the same room with two of the jurors, and on one or two nights during the trial plaintiff slept in the same bed with one of the jurors. That they undressed at night and dressed in the morning in the presence of each other, ate meals together, washed in the same bowl, and plaintiff went to and from their meals together with said jurors."

EYSTER & EYSTER, for appellant. The court was in error in sustaining demurrer to pleas 3 and 5.—*Andrews v. B. M. R. R. Co.* 99 Ala. 440; *A. G. S. v. Mc-Whorter,* 156 Ala. 277; *C. of Ga. v. Blackmon,* 53 South. 807; *L. & N. v. Young,* 153 Ala. 235; *Benson v. L. & N.* 116 Ala. 202. The court should have given charges 1 and 2 requested by defendant.—*L. & N. v. Young,*

*supra.* The court should have granted motion for a new trial.—*Craig & Co. v. Pearson L. Co.* 169 Ala. 548; *B. R., L. & P. Co. v. Drennen,* 57 South. 876; 42 A. & E. Law, 519.

J. B. Brown, A. A. Griffith, and Kyle & Hutson, for appellee. The assignment of error as to pleas 3 and 4 is single, and if demurrer was properly sustained to either plea, the assignment is not sustained.—*Aetna L. I. Co. v. Laster,* 153 Ala. 630; *Brent v. Baldwin,* 160 Ala. 635; *Craig v. Pearson L. Co.* 169 Ala. 551. Assignments of error 29, 30 and 31 are indefinite.—*Claflin & Co. v. Rosenburg,* 101 Ala. 213. Counts 1, 2, 3 and 4 are good as subsequent negligence counts.—*C. of Ga. v. Foshee,* 125 Ala. 199; *A. G. S. v. McWhorter,* 156 Ala. 281; *L. & N. v. Calvert,* 55 South. 812. The defendant's pleas were subject to the demurrers interposed.—*A. G. S. v. McWhorter, supra; Johnson v. B. R., L. & P. Co.* 149 Ala. 534; *C. of Ga. v. Blackmon,* 169 Ala. 304. Even if the demurrers were erroneously sustained to some of the pleas such ruling was harmless, as the same evidence was admissible under other pleas, and under the general issue.—*Montgomery County v. Pruitt,* 57 South. 823; *L. & N. v. Posey,* 96 Ala. 262. Under the statute the duty was on the railroad to acquit itself of negligence.—Secs. 5473, 5476, Code 1907; *C. of Ga. v. Wood.* 129 Ala. 486. The questions of subsequent negligence and proper use of preventive measures were jury questions.—*C. of Ga. v. Blackmon, supra; B. R., L. & P. Co. v. Smith,* 121 Ala. 355. The court properly denied the motion for a new trial.—16 A. & E. Enc. of Law, 519; Thompson & Merriam on Juries, secs. 425-436; *K. C. M. & B. v. Phillips,* 98 Ala. 172; *Clay v. City of Montgomery,* 102 Ala. 297; 29 Cyc. 796-7. The burden was on the movant to show want of knowledge on

his part of the relation before the verdict was rendered. —*Ala. L. Co. v. Cross,* 152 Ala. 562; 29 Cyc. 955-6; 91 Ga. 344.

SOMERVILLE, J.—On the trial in the court below it was not disputed but that plaintiff was a trespasser on defendant's track, and was guilty of contributory negligence in going thereon as he did. Plaintiff's case, therefore, was that defendant's servants failed to use due diligence to stop or slacken the speed of the train and so to avoid injuring plaintiff after discovering his peril, having time and opportunity to do so; or that they wantonly injured him. The latter phase of the case included in issue not only the wanton negligence of the enginemen in not stopping or slackening the speed of the train with an actual knowledge of plaintiff's imminent peril, but also their wanton negligence in running the train through an incorporated town and densely populated locality at a dangerous rate of speed and without proper vigilance or control, and over a section of track in constant use as a footway by great numbers of people.

The plea of the general issue imposed upon plaintiff the burden of affirmatively proving these issues; while pleas 2 and 9 sought to avoid the effect of proof of defendant's subsequent negligence by showing that plaintiff himself was guilty of still later negligence in remaining on the track until he was struck, with knowledge that the train was approaching and would strike him if he so remained.

Demurrers were sustained to defendants special pleas 3, 4, 5, 6, 7, 8, 10, 11, and 12, and error is assigned therefor. All of these, except plea 3, were subject to the ground of demurrer that they did not show by specific averment, or unequivocal statement of facts, that plaintiff was conscious of his imminent danger.

Plea 3, however, is coupled in assignment with defective plea 4, and so the assignment cannot be sustained. So pleas 5, 6 and 7, and pleas 8, 9, 10 and 11, are grouped in assignment, and any one of either group being defective, the whole assignment is bad.

But reversible error cannot be imputed with respect to any of the rulings on these pleas for the reason that, in so far as they set up plaintiff's subsequent negligence, or last clear chance to escape injury, that issue was fully available to defendant under plea 9 and with a diminished burden as to collateral averments; and, in so far as they were merely a traverse of plaintiff's case, all of their averments were open to proof under the general issue. And, in fact, both issues were clearly framed by the evidence, and fairly presented to the jury under the instructions of the court. No prejudice resulted to defendant by reason of the elimination of these pleas, and it is unnecessary to further discuss their merits.

We do not find that charge 1, refused to defendant, is referred to in any assignment of error.

Charge 2, refused to defendant, is defective in that it requires a verdict for defendant upon the predicate solely that upon the discovery of plaintiff's presence on the track, and his inadvertence to the approaching train, the engineer blew the whistle, and put in operation the appliances at his command to avoid the collision. That ignores that aspect of defendant's liability based upon the duty of its enginemen to have the train under reasonable control, and to keep a lookout and discover persons who might be upon the track at the point of the collision.

Whether the enginemen were guilty of negligence in these particulars, and, if so, whether it was wanton negligence, in view of the locality and the known hab-

itual use of the track at that point by the public, were questions for the jury on the whole evidence.—*So. Ry. Co. v. Stewart,* 179 Ala. 304, 60 South. 927, and cases cited. If limited to the other phases of the case, the charge would have been a correct statement of the law.

The failure of the defendant's engineer, after discovering plaintiff in imminent peril on the track, to use all the means within his power known to skillful engineers to stop the train before plaintiff was injured would, under some tendencies of the evidence, have been a negligent breach of duty. The injury occurred in an incorporated town; and charge 2, given for plaintiff, correctly placed the burden of proof as to its freedom from negligence upon the defendant company.—Code 1907, §§5473, 5476.

Other assignments of error relating to rulings upon the evidence and to charges given or refused are not argued, and will not be considered.

On the issue of misconduct on the part of plaintiff and two of the jurymen, and undue influence upon them by association with plaintiff during the trial, as presented by defendant's motion to set aside the verdict, the following facts are shown without dispute:

The jury was impaneled for the trial of this case on Wednesday evening. Two of the jurors, Parker and Hawkins, were staying at the boarding house of a Mrs. Porter. They occupied the same room, in common with one Smith, a grand juror, and one Speigle, a petit juror not serving in the *Turney Case.* On Wednesday night plaintiff applied to Mrs. Porter for board and lodging, and was assigned by her to the room occupied by Parker and Hawkins, which contained three beds. On that night plaintiff slept in the bed with Parker, Hawkins sleeping in one of the other beds. On Thursday night all three of them slept in the room in dif-

ferent beds. On Friday night the judge charged the jury, and after deliberating about an hour the jury separated for the night and left the courthouse at 11:30 p. m. Plaintiff there joined Parker and they walked to the boarding house together by themselves, stopping for a while on the way. Plaintiff, Parker and Hawkins again slept in the same room that night. On Saturday morning the jury rendered a verdict for plaintiff for $10,500.

During the course of the trial plaintiff ate all of his meals at the same table with Parker and Hawkins, and many times walked to and from the courthouse with Parker, in company with others. In their room they dressed and undressed in each other's presence, and shared by turns the use of its simple conveniences. All of them testify that there was no conversation at any time between plaintiff and the jurors in regard to the case on trial.

Plaintiff says he does not remember talking with Parker as to where the latter was boarding before plaintiff went to Mrs. Porter's. But Parker says: "There was something said about a boarding place, and I told him where I was boarding; my best recollection is he did not say he would go there, but he did go there for supper that night." Plaintiff says his father directed him to go there, and that he made no request to be placed in the room with the jurors. Mrs. Porter also says she placed him in that room without any request from him, because she had no other available place for him.

Plaintiff was a youth of 19 years, born and raised eight miles from the village of Falkville; and Parker was a neighbor living a mile or so away with whom he was on friendly, but not intimate, terms; while Hawkins lived about eight miles distant from plaintiff.

· Plaintiff says he was never in court, and never had anything to do with litigation before this time. He has attended eight sessions of school of six months each.

The effect of misconduct on the part of jurors and parties has often been considered by the courts. It is generally held that where a juror has been treated, fed, or entertained by the successful party a new trial will be granted upon consideration of public policy, without regard to the probable effect of such conduct upon the verdict.—Thomp. & Mer. on Juries, § 372; *Craig v. Pierson Lumber Co.,* 169 Ala. 548, 53 South. 803; *Bradshaw v. Degenhart,* 15 Mont. 267, 39 Pac. 90, 48 Am. St. Rep. 677. But casual' meetings and the interchange of casual and ordinary civilities between a party and a juror during the recesses of the court, no sinister design being apparent, will not ordinarily suffice to avoid the verdict, if the court can clearly see .that it could not have had any effect on the mind or sentiment of the juror.—2 Thomp. on Trials, § 2559, and cases cited; *Alpena Tp. v. Mainville,* 153 Mich. 732, 117 N. W. 838; *Ga. Central Ry. Co. v. Hammond,* 109 Ga. 389, 34 S. E. 594; *Hilton v. Southwick,* 17 Me. 303, 35 Am. Dec. 253; *Vollrath v. Crowe,* 9 Wash. 374, 37 Pac. 474; *Ford v. Holmes,* 61 Ga. 419.

The facts here shown are most extraordinary, and it may well be doubted if judicial annals can present a parallel. The social relation of roommate and bedfellow is necessarily an intimate one, and, when protracted for several days and nights, as here, it is impossible to rationally assume that such a relation has not engendered an interest and a sympathy entirely out of the ordinary, and which will find expression, conscious or unconscious, in any action by either party affecting the interests of the other. We have given very careful consideration to the facts before us, and we cannot es-

cape the conclusion that this verdict, rendered in part, at least, by these two jurors, Parker and Hawkins, cannot be permitted to stand. To hold otherwise would, we think, be an affront to common decency and decorum, and would furnish a demoralizing precedent for the degradation of verdicts and the pollution of the judgments of courts. It would, indeed, imperil the purity of judicial administration, and destroy public confidence in its justice and impartiality—for it is safe to say that no victim of a hostile verdict under such conditions as these could ever be made to feel that he had had a fair trial by an unbiased jury. As said, per DOWDELL, C. J., in *Craig v. Pierson Lumber Co.,* 169 Ala. 548, 552, 53 South. 803, 805 : "Aside from protecting the rights of parties in the fair and impartial administration of justice, respect for the courts calls for their condemnation of any improper conduct, however slight, on the part of a juror, of a party, or of any other person, calculated to influence the jury in returning a verdict. So delicate are the balances in weighing justice that what might seem trivial under some circumstances would turn the scales to its perversion. Not only the evil, in such cases, but the appearance of evil, if possible, should be avoided." See, also *B. R., L. & P. Co. v. Drennen,* 175 Ala. 338, 57 South. 876.

It is no answer to say that the obnoxious association was not initiated by the choice of the parties. It was continued by them, without objection by either, and without the slightest effort to interrupt it. It was in no sense necessary or compulsory, and it was the plain duty of each of them to avoid it; and its renewal by them each day must be regarded as a new and voluntary offense. If necessary, the jurors should have reported the matter to the court without delay. The impropriety of the continued intimacy was so gross and

so fundamental that neither the ignorance nor the inadvertence of the offending parties can excuse or palliate it. A party litigant who does not understand the gravity of such an offense must be made wise even at the cost of setting aside his verdict.

The trial court should have set aside the verdict, and directed another trial. Its judgment overruling defendant's motion in that behalf will be reversed, the mo tion will be here granted, and the cause will be remanded for another trial.

It is urged in avoidance of this result that the motion was properly refused because it contained no averment that defendant or its counsel did not discover the misconduct complained of before the rendition of the verdict, and the evidence does not show their ignorance of it. The rule invoked, though generally prevailing, has no force in a case where the misconduct of the juror is instigated, prompted, or shared in by the adverse party himself. It cannot be applied here.—*Craig v. Pierson Lumber Co.,* 169 Ala. 548, 553, 53 South. 803.

Reversed, rendered, and remanded. All concur, except DOWDELL, C. J., not sitting.