(112 So. 197)

**BRIGGS et al. v. PROWELL.**   (6 Div. 883.)

Supreme Court of Alabama.   March 31, 1927.

**1. Appeal and error ⬚1247—Instruction on amount plaintiff could recover in action for breach of conditions of supersedeas bond, while involved and misleading, held not reversible error.**

In action for breach of conditions of supersedeas bond, instruction on amount that plaintiff was entitled to recover, which contained double negative, not intended, while involved and misleading, *held* not reversible error.

**2. New trial ⬚55—Party's misconduct in jurors' presence need not be brought to court's attention during trial, but is ground for motion for new trial.**

Misconduct of party to cause, in presence of jurors, need not be brought to attention of court during trial, but may be made ground for motion for new trial, since it does not lie in mouth of such guilty party to object on ground of speculating on verdict of jury, since his own conduct produced condition.

**3. New trial ⬚56—That party to cause was in private conversation with juror on subject of trial was sufficient ground for new trial.**

That party to cause was in private conversation with juror on subject of trial was sufficient ground for new trial without determining whether juror was influenced by what was said to him.

---

⬚For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Circuit Court, Jefferson County; Richard V. Evans, Judge.

Action by V. Q. Prowell and Woolsey Morrow, clerk of the circuit court of Jefferson county, for the use of V. Q. Prowell, against W. S. Briggs, H. E. Simpson, Judson Deramus, and J. A. Simpson, for breach of conditions of a supersedeas bond. From a judgment for plaintiff, defendants appeal. Transferred from Court of Appeals under Code 1923, § 7326. Reversed and remanded.

The following charge was given at the request of the plaintiff:

"1-A. The court charges you that the plaintiff is entitled to recover from the defendants whatever, from all the evidence in this case, you may determine he is entitled, not exceeding the amount claimed. The court further charges you, if you are not reasonably satisfied from the evidence defendants have not proven any one of their pleas of set-off, then the amount you determine plaintiff was entitled should be the amount of the verdict for the plaintiff."

Lange, Simpson & Brantley, of Birmingham, for appellants.

Charge 1A, given for plaintiff, is in effect an affirmative charge; it invades the province of the jury and does not correctly state the law. Davidson v. Woodruff, 63 Ala. 432; Furhman v. Mayor, 54 Ala. 263; Johnson v. State, 62 Ala. 9; T. C. I. & R. Co. v. Barker, 6 Ala. App. 413, 60 So. 486. The trial court should set aside the verdict where it is shown that the plaintiff during the course of the trial, in the presence of members of the jury, made statements with reference to the trial which tended to influence the minds of the jury in their consideration of the case. Scott v. State, 110 Ala. 53, 20 So. 468; Manning v. A. B. & A. R. Co., 206 Ala. 629, 91 So. 446.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellee.

Counsel discuss the questions raised and treated, but without citing authorities.

GARDNER, J. Suit by appellee against appellants upon a supersedeas bond. Plaintiffs' right of recovery, so far as the suit upon the bond is concerned, was clearly established, and the litigated issues of fact were presented by several pleas of set-off and recoupment. There were two or more matters of set-off, composed of separate claims embraced in these pleas. The evidence concerning them was in sharp dispute. There was verdict and judgment for plaintiff, from which defendants prosecute this appeal.

[1] The first assignment of error relates to the action of the court in giving for the plaintiff charge 1-A. The charge is involved and misleading. In its second sentence there is a double negative, where the writer evidently did not so intend, and, indeed, is for all practical purposes rendered unintelligible. It should not have been given, but the action of the court in giving it does not constitute reversible error.

The question pressed most urgently for our consideration arises on the motion for new trial, based upon the misconduct of plaintiff in remarks made in the presence of some members of the jury just following adjournment of the court for the noon recess on the second day of the trial. Some few preliminary observations are appropriate for consideration of this ground of the motion.

The case was one very vigorously contested on both sides, with occasional display of passion on the part of counsel. Upon adjournment for the noon recess of the second day of the trial, the jury were permitted to disperse. Just before adjournment, it appears there was what is referred to as a "little flurry" in the trial, when plaintiff said that one of the defendants "had sworn a lie about the contract"; the plaintiff being angry at the time, and giving some show of feeling. Plaintiff had testified, as had also his witness, a young woman, whose testimony was in corroboration of his own, and in contradiction of that of defendants. It was after plaintiff's derogatory remark of one of the defendants and the show of anger that the adjournment for noon recess was had. Counsel for defendants had remained a short time in the courtroom collecting his papers, and, when he walked into the hall just outside the courtroom, and where is the elevator for the floor below, he saw the plaintiff standing at the elevator shaft with a group of four or five men, members of the jury in this case. As counsel passed this group, plaintiff was talking in a voice louder than that ordinarily used in conversation, and clearly audible to the jurors present. Counsel states in his affidavit that what plaintiff was saying when he emerged from the courtroom he did not understand, but was at that time talking in the same tone of voice just described. As counsel approached, he heard plaintiff inquire for the young lady, the witness who had during that morning testified in his behalf, calling her by name, and saying that he desired to take her out to lunch, with the concluding remarks, "Our witness is hired, you know." Counsel stopped as he was passing the elevator, and plaintiff said nothing further in his presence. The elevator came, and plaintiff, the members of the jury, and the young lady were carried to the lower floor.

The testimony of counsel, as above outlined, was not controverted by plaintiff or the young lady, neither offering any affidavit or testimony on the matter, though present in the court at the time. Plaintiff offered the testimony of one of the jurors present, who corroborated counsel for defendants upon some of the principal features of the testi-

mony, but who states that, while he remembers plaintiff was talking, he does not recall what he was saying. He further states that plaintiff "was talking so loud that what he said could have been heard by myself and the other jurors who were standing near him," all of whom were nearer than counsel who had testified.

As to whether plaintiff's private conversation with the jurors pertained to his case, other than the language established by affidavit of counsel without dispute, is a matter left to some degree of uncertainty, but, in view of his anger—to which he had just given a show of feeling, and the tone of his voice as testified to by counsel, and in view of the weakness of human nature—it requires no great strength of the imagination to surmise that some other remarks had been made referable to the case. Indeed, the remark that was overheard had reference to the case, and plaintiff was in private conversation with the jurors as counsel entered the hall, and such conversation ceased when counsel stopped nearby. Plaintiff makes no effort to explain this conversation by his own evidence, and that of the juror is of a negative character only. So unexplained, it casts a suspicion upon the entire conversation. 2 Thompson on Trials, § 2560.

But, however that may be, and without regard thereto, the remark that was overheard had direct reference to the case, and was highly improper. Counsel for appellee insist that in no event could the remark, "Our witness is hired, you know," be of prejudice to defendants; that, if meant as a joke, it was harmless, and, if seriously said, would prove of detriment to plaintiff rather than defendant. But this argument loses sight of the general situation and the surroundings, as well as the varied meanings that may be conveyed by one to another by inflections of the voice, a sarcastic smile, and other methods. As we view it, plaintiff was evidently in no jocular humor, and the remark was deliberately made by him with the intention it should carry a meaning to the jurors present favorable to the young lady who had just testified, and antagonistic to any criticism or insinuation that she had been "hired." The effect of improper conduct of parties to the cause in the presence of the jurors has been the subject of much discussion, and has met the prompt and emphatic denunciation of this court.

[2] When the misconduct is that of a party to the cause, it need not be brought to the attention of the court during the trial, but may be made a ground for a motion for new trial, upon the theory that it does not lie in the mouth of such guilty party to object on the ground of speculating on the verdict of the jury, since his own conduct produced the condition. New York Life Ins. Co. v. Turner, 210 Ala. 197, 97 So. 687.

The following from Craig & Co. v. Pierson Lbr. Co., 169 Ala. 552, 53 So. 803, has met with emphatic approval in our subsequent decisions:

"Aside from protecting the rights of parties, in the fair and impartial administration of justice, respect for the courts calls for their condemnation of any improper conduct, however slight, on the part of a juror, of a party, or of any other person, calculated to influence the jury in returning a verdict. So delicate are the balances in weighing justice that what might seem trivial under some circumstances would turn the scales to its perversion. Not only the evil, in such cases, but the appearances of evil, if possible, should be avoided." New York Life Ins. Co. v. Turner, supra; L. & N. R. Co. v. Turney, 183 Ala. 398, 62 So. 885.

See, also, Manning v. A. B. & A. R. Co., 206 Ala. 629, 91 So. 446.

A fair and impartial jury trial forms the groundwork upon which the superstructure of our judicial system is erected, and the principle recognized in our cases and vigorously enforced rests upon grounds of public policy that this foundation should not be undermined. That it is the recognized rule generally appears from an examination of the authorities cited in the note to 2 Thompson on Trials, § 2559. It is likewise a long-established rule. One of the earlier cases of interest in this connection is that of Cox v. Tomlin, 19 N. J. Law, 76, from which we take the following excerpt:

"To guard against such improper interference with jurors, and to keep the streams of justice pure and uncontaminated, jurors were formerly kept together from the time they were impaneled and sworn, until they rendered their verdict. The increase of litigation and the length and intricacy of causes, growing out of the extended and complicated transactions of a mercantile and trading people, long since rendered it necessary to relax this rigid practice, which was found to be inconvenient and oppressive to courts and jurors. But since they have been permitted to separate during the progress of trials, courts have sedulously endeavored to protect them from the outdoor interference of parties and their coadjutors, by setting aside verdicts in all cases where such attempts have been made, without stopping to inquire, whether they had any influence on the verdict, or not.

"In this case, the prevailing party was seen to be in communication with one of the jurors, and was distinctly heard speaking to him in relation to the matters in controversy. * * * The inquiry, whether the juror was influenced or not, by what was said to him, is of too delicate and difficult a character, to be made the basis of judicial action on this matter. It is enough, that the party was in private intercourse with the juror, on the subject of the trial, and I am willing it should be understood to be the determination of the court, to set aside every verdict in a doubtful or contested case, if it can be ascertained that the prevailing party, by himself, his retainers or agents, has held any private conversation with

a juror, out of court, on the subject of the cause, while it was on trial."

[3] As stated by the New Jersey court, and as reiterated by this court in Craig v. Pierson Lbr. Co., supra, whether or not the juror was influenced by what was said to him, is of too difficult and delicate a character for judicial determination, but it is sufficient if the party to the cause was in private conversation with the juror on the subject of the trial. "So delicate are the balances in weighing justice that what might seem trivial under some circumstances would turn the scales to its perversion." Craig v. Pierson Lbr. Co., supra. And, as said in L. & N. R. Co. v. Turney, supra:

"A party litigant who does not understand the gravity of such an offense must be made wise even at the cost of setting aside his verdict."

In view of the reversal of the cause upon this ground, a consideration of the other ground of the motion for new trial here urged may be pretermitted as unnecessary to determine.

Let the judgment be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur.