TOWNSHIP OF ALPENA v. MAINVILLE.

1. EVIDENCE — HEARSAY — STATEMENTS IN PARTY'S ABSENCE—ADMISSIBILITY—EFFECT OF CROSS-EXAMINATION.

Where, in an action against the principal and sureties on a township treasurer's bond, defendant treasurer claimed credit for moneys paid on account of school taxes, which the school district treasurer claimed he had already had credit for, defendants cross-examined at length a witness as to what the school treasurer claimed with respect to the matter at a meeting of the township officers, the school treasurer was properly permitted to state the conversation, over the objection that defendants were not present.

2. WITNESSES—CREDIBILITY—CROSS-EXAMINATION.

Defendant treasurer being sworn as a witness, it was proper, on cross-examination, as affecting his credibility, to show that in many instances, while he was treasurer, he had collected taxes and given receipts therefor, but had not marked such taxes as paid on the tax-roll, and they were returned as delinquent.

3. TRIAL—RECEPTION OF EVIDENCE—REBUTTAL—PROPRIETY.

Defendant treasurer, having testified that he thought he had paid a certain order through the bank, the cashier of the bank was properly called on rebuttal to show what arrangement had been made whereby money was placed by the treasurer in the bank, and orders drawn on account, and whether the order in question had been so paid.

4. EVIDENCE—MATERIALITY—EVIDENCE TENDING TO AUTHENTICATE EXHIBITS.

Where a paper claimed to be that upon which the school and township treasurers cast up their account at the time of coming to a settlement at a bank had been introduced in evidence as an exhibit, the cashier of the bank was properly permitted to testify that at the time in question scratch pads containing leaves of similar color and size were in use at the bank.

5. NEW TRIAL—GROUNDS—REFUSAL—PROPRIETY.

It was not error to deny a new trial urged upon the grounds (*a*) that plaintiff's counsel, without objection at the time, illustrated his argument with a child's shoe of the size of one in which defendant claimed an important paper had fallen from a shelf and for a time become lost; (*b*) that a juror walked on the way to court with said counsel; (*c*) that counsel was intemperate in argument, the impropriety amounting only to a breach of good taste, and not of law.

Error to Alpena; Emerick, J. Submitted April 16, 1908. (Docket No. 82.) Decided July 13, 1908.

Debt by the township of Alpena against William H. Mainville, principal, and John Beck and Andrew W. Comstock, sureties, upon an official bond. There was judgment for plaintiff, and defendants bring error. Affirmed.

*Joseph H. Cobb*, for appellants.

*Charles R. Henry* (*Lemuel G. Defoe*, of counsel), for appellee.

McALVAY, J.    Defendant Mainville was township treasurer of plaintiff township for the years 1902 and 1903. His codefendants were sureties upon his official bonds for both years. Claiming that there was a balance due from Mr. Mainville of moneys which had come into his hands as such treasurer, and which he refused on demand to pay over, this suit was brought to recover the same.

This township under a special act of the legislature is included in one school district. During the term of defendant's office as town treasurer, Paul Weine was treas-

urer of the union school district. As such treasurer, on January 17, 1903, he drew an order upon defendant, on account of school taxes collected for 1902, in the sum of $900, which was paid by defendant January 22, 1903.

On March 16, 1903, school treasurer Weine drew an order on defendant for $4,341.74 for school taxes collected for the year 1902. It is admitted that this last order was for the entire amount of school taxes for that year, and that defendant would be entitled to credit on it for the $900 already paid on account of these taxes. The two treasurers had a meeting at the Alpena County Savings Bank on March 18, 1903, and settled their account. Mr. Weine claims that in the settlement this $900 was allowed treasurer Mainville. Mr. Mainville claims that it was not taken into account or allowed. The court in his charge to the jury stated the claims of both sides upon this, the only dispute in the case between them, as follows:

"Now, each of the parties—each of the gentlemen, make up their figures of the transaction on that day, and I will give them to you.

"Mr. Weine says that on that day Mr. Mainville was to pay him two sums. *First*, this order of $4,341.74; and, *secondly*, another order which he held in his hands, which had been drawn the year before, upon November 7th, 1902, for the sum of $181.96, delinquent taxes and delinquent library money which Mr. Mainville had received from the county treasurer. He says he had those two demands, those two demands in his hands against Mr. Mainville. Those two demands would amount to $4,523.70. And he says that Mr. Mainville was then entitled to two items of credit against that demand. Two items of credit. What are they? *First*, this $900. He says he was entitled to that. *Second*, the amount of certain school orders, which Mr. Mainville had paid and redeemed and had in his hands, and which were a charge against the district and a credit to Mr. Mainville, amounting to $287.95. Now, the amount of the demands which he held against Mr. Mainville, he says, was $4,523.70, and these two credits $900 and $287.95, being added together, makes $1,187.95. Subtracting those two credits of Mr. Mainville's from the demands which were there presented against him, leaves

$3,335.75, and he says that for that sum Mr. Mainville gave him his check, which he did.

"Now, that is Mr. Weine's account. That is Mr. Weine's claim. There is no question, gentlemen, in this case, but what upon that occasion, and as the settlement between them, that Mr. Mainville gave Mr. Weine his check for $3,335.75, and Mr. Weine says that that is the amount —Mr. Weine says that that was the manner in which that amount was arrived at.

"Now, what does Mr. Mainville say? Mr. Mainville says, first, that he did not know, at that time, that this sum of $4,341.74 included all the taxes which he had collected in this township for the school district. That he supposed he was bound to pay that, in addition to this $900, which he had already paid. So he has said here in this case as a witness; and that he did pay that amount, $4,341.74, supposing that it was an existing demand against him for that amount of money; and that, really, the school taxes which he had collected, would not amount to that sum, but would be $900 more or $5,241.74. That acting upon such belief, that he treated that as what he should settle for. That he had in his hands at that time, in school orders which he had redeemed, the sum of $1,005.99.

"You understand me. He says that he had it in his hands at that time, in school orders which he had already paid and redeemed for the district, and, of course, for which he was entitled to credit, if he had paid them, the sum of $1,005.99; and that subtracting that sum from the amount of this order of $4,341.74, left $3,335.75, which was the amount which he should account for to the district, and that he gave his check therefor.

"Now, gentlemen, there are the two opposing positions of these men. That is the manner in which they array themselves, one against the other in battle upon this subject. And it is for you to say, from the evidence in this case, which of them is correct.

"Mr. Weine claims that this subject of the payment of the $900 was discussed between them, and was given to this man as a credit. Mr. Mainville says it was not mentioned. Mr. Weine says that he made there at that time, these figures upon this little slip of yellow paper and that Mr. Mainville must have seen him writing them down. These figures, which represent in substance Mr. Weine's claim, as he figures, and as I have given them to you—I

say, in substance. These figures, however you arrange them, will show the same thing. Mr. Mainville denies that. He says he neither saw Mr. Weine writing upon that paper, nor did he see such a paper there, and the subject of the $900 was not mentioned between them.

"Now, gentlemen, you have got to decide that between these men. There is no use in mincing matters. It is a flat contradiction."

The question in the case was one of fact, and was fairly submitted by the court in his charge to the jury, to which no exception was taken. The plaintiff recovered a judgment for the amount claimed, with interest.

The errors assigned by defendants upon which we are asked to reverse the judgment relate:

(1) To the admission of evidence.
(2) To the refusal of the court to grant a new trial.
(3) To improper argument by plaintiff's counsel.

1. It is claimed that the court erred in allowing witness Paul Weine to testify to a conversation he had with the members of the town board at a certain meeting, under objection that none of defendants were present. Defendants had cross-examined the town clerk at length as to what witness Weine had claimed at this meeting. When the objection was made the court said:

"I permit this in view of the cross-examination of the witness DeLaval yesterday. If I recall it correctly, he was interrogated exactly upon this point as to what claim Mr. Weine made at that time."

It was not error to allow the question to be answered. The fact that defendants were not present was immaterial.

Error is assigned upon evidence admitted to show the conduct of defendant Mainville relative to the collection of taxes. Upon his cross-examination it was shown that in many instances while he was treasurer he had collected taxes and given receipts therefor, but had not marked such taxes as paid on the tax-roll, and they were returned delinquent. This evidence was offered

as bearing upon the credibility of defendant, and was properly admitted. The court in allowing this specifically limited it to cross-examination. *Pratt* v. *Wickham,* 133 Mich. 356, and cases cited.

Defendant Mainville had testified relative to a certain order, material to the issue, that he thought he had paid it through the bank. Mr. Prince, the cashier, on rebuttal, was produced to show what arrangement had been made whereby money was placed by the treasurer in the bank, and school orders drawn on the account, and also to show whether the order in question was so paid. It was not error to permit such proof to be introduced and it was proper rebuttal.

Exception was taken, and error is assigned, upon the admission of some testimony of the cashier of the bank relative to two exhibits. The first of these exhibits was claimed to be the original memorandum of the figures Mr. Weine made at the time he settled with Mr. Mainville at the bank. The cashier was allowed to testify that at this time paper similar in color (yellow) and size was in the directors' room where the settlement was made. As to the other exhibit, which was a blank leaf from a scratch pad similar to the exhibit first referred to, witness testified that such pads were in use at the bank. This was allowed upon the offer made by plaintiff that it was to show that there was paper used in the bank similar to that on which the other exhibit was written. This evidence was material and properly admitted.

2, 3. Error is assigned because the court denied a motion for a new trial, based upon the claim that plaintiff's attorney used an improper illustration in his argument; because of claimed improper conduct of such attorney towards a juror, and because of intemperate argument.

The following reasons were filed by the court for denying this motion:

"The charge of the court in this case contains a full

statement of its facts, which I shall not repeat at length here, but only refer to the same for the purposes of the present motion.

"On March 31st, 1903, the defendant Mainville, as township treasurer, made his settlement with the township board and was found to owe the township $822.93. He did not present to the board at this time Exhibit A, being the order for $900 drawn by Union School District No. 1 of the township of Alpena upon the township treasurer on January 17, 1903, and which sum Mainville claims he paid the second time on March 18, 1903, to the treasurer of such school district on his final settlement for the year with that officer. On the trial he accounted for his failure to make such claim before the board for this item of double payment of school money by saying that the order itself was temporarily lost at the time of his settlement with the board and he himself had forgotten the facts. His wife testified the paper (Exhibit A) was kept with others upon a shelf in a cupboard, and, sometime after the settlement, was found in a child's shoe in the bottom of the cupboard. Being asked the age of the child, she said five years.

"In the opening argument to the jury Mr. Henry produced a child's shoe, which he asserted would be about the size of a shoe ordinarily worn by a child of that age, and argued to the jury the improbability of such a paper as Exhibit A having been lost in such a place. No objection whatever was made to this proceeding by defendants' counsel until after the jury had been charged by the court and had retired to deliberate upon their verdict, when counsel objected to the use of the shoe because the same had not been offered and put in evidence, and asked to have the jury recalled and discharged. I do not think the point well taken. The comparative size of such a child's shoe is a matter of such common knowledge the jury could not have been misled. It seems this shoe was procured by Mr. Henry from the store of George Masters & Sons, and Mr. George Masters, Jr., a member of the firm, was also a member of the jury. When Mr. Henry went to the store Mr. Masters was not in, and it is not claimed the shoe was procured from him, but he afterwards came in and walked to the court-house with Mr. Henry. It is claimed this should invalidate the verdict.

"I am aware that in Wayne county, and perhaps in other circuits, the standing rules of court forbid a lawyer

to converse with any juror while a case is on trial.   No such rule exists in this circuit and I doubt its necessity in this community.

"It cannot be because a lawyer's neighbor is sitting as a juror on a trial in which he is engaged, and they walk together to the court-house conversing upon indifferent matters, that of itself will avoid a verdict.   But that is the claim made here.   I do not agree with such a rule and decline to set aside the verdict for that reason.

"It is only just to Mr. Masters to say that no one for a moment contends that it would be possible to speak to him.

"Some of the language of Mr. Dafoe in his closing argument to the jury in reference to Mr. Mainville is made a ground for asking a new trial.   The point raises a question of good taste and not of law.   *People* v. *Tubbs*, 147 Mich. 8, 9; *Driscoll* v. *People*, 47 Mich. 413.

"Defendant's motion for a new trial is therefore denied, but without costs.

"Dated February 9th, 1906.

"FRANK EMERICK, Circuit Judge."

It was not error to deny this motion for the reasons given by the court.   We find no error in this record.

The judgment is affirmed.

GRANT, C. J., and BLAIR, MONTGOMERY, and CARPENTER, JJ., concurred.