**NORTHERN MINING & TRADING CO. v. ALASKA GOLD RECOVERY CO. et al.**

Circuit Court of Appeals, Ninth Circuit. May 31, 1927.

Rehearing Denied Aug. 1, 1927.

No. 5001.

**I. Eminent domain ⊜⇒253(2)—Interlocutory order finding mine owners entitled to appropriate rights in adjoining property and appointing commissioners held reviewable by writ of error (Comp. Laws Alaska, § 636).**

Interlocutory order, finding that owners of placer mine were entitled to appropriate certain rights in adjoining property for purpose of enabling them to obtain a site for plant and equipment and appointing commissioners, *held* reviewable by writ of error, notwithstanding general rule, under Comp. Laws Alaska, § 636, relating to eminent domain and right of appeal.

**2. Eminent domain ⊜⇒167(5)—Local Alaska statute relating to eminent domain, conferring right of review of interlocutory order by writ of error, held not repealed by subsequent general legislation (Comp. Laws Alaska, § 636).**

Comp. Laws Alaska, § 636, relating to eminent domain, and conferring right of review of an interlocutory order by writ of error, being a local statute, has not been superseded or repealed by subsequent general legislation.

**3. Eminent domain ⊜⇒33—Alaska eminent domain statutes do not authorize taking private property to obtain site for plant to operate placer mine (Comp. Laws Alaska, § 633, subd. 10; Laws Alaska 1913, p. 118).**

Comp. Laws Alaska, § 633, subd. 10, and Act April 28, 1913 (Laws Alaska 1913, p. 118), relating to eminent domain, do not authorize the taking of private property by placer mine owners to obtain a site for plant and equipment to operate the mine, which could not be operated on the claim itself because of periodical inflow of sea water.

**4. Eminent domain ⊜⇒167(4)—Alaska eminent domain statutes must be construed strictly, particularly where different construction would render them of doubtful validity (Comp. Laws Alaska, § 633, subd. 10; Laws Alaska 1913, p. 118).**

Comp. Laws Alaska, § 633, subd. 10, and Act April 28, 1913 (Laws Alaska 1913, p. 118), relating to eminent domain, are to be construed strictly, particularly where a different construction would render them of doubtful validity.

Dietrich, Circuit Judge, dissenting.

Appeal from and in Error to the District Court of the United States for the Second Division of the Territory of Alaska; G. J. Lomen, Judge.

Suit by the Alaska Gold Recovery Company and others against the Northern Mining & Trading Company. From an interlocutory judgment and order appointing commissioners, the defendant appeals and brings error, and moves to dismiss. Motion to dismiss denied. Reversed and remanded.

The estate of William O'Brien, deceased, and George D. Schofield are the owners and in the lawful possession of a placer mining claim described as Combers Right placer claim in the Cape Nome mining district of Alaska, subject to the paramount title of the United States. The claim thus described extends to ordinary high tide on Bering Sea to the south or southwest. The Northern Mining & Trading Company is the owner of the Hunter placer claim, adjoining the Combers Right claim on the north or northeast.

The present action was instituted by the owners of the Combers Right claim to con-

demn and appropriate certain rights in the Hunter placer claim under and pursuant to the provisions of the Alaska Code. The exact purpose for which the property sought to be condemned is to be used does not very clearly appear from the amended complaint or from the findings of the court. It does appear from the findings however:

"That there is erected on the northeast corner of the Combers Right placer, adjoining the southeast corner of Hunter Beach of Sweet Marie placer mining plant valued at $80,000, consisting of elevated sluiceway, jigs, ball mill, amalgamator bucket line, power, cable, mast, poles, and other modern machinery and appliances, capable of handling an estimated yardage of 1,000 cubic yards of sand, gravel, and material during each 24 hours of operation, and extracting the mineral values therefrom, which mining plant plaintiffs seek to utilize in mining said Combers Right placer and the land and shoal water between low and mean high tide on the shore of Bering Sea adjoining said claim, for gold and other precious metals therein contained. * * *

"That the rise and fall of tide on Bering Sea at the southerly boundary line of said Combers Right placer in no wise interferes with the mining of said claim, but that the sea waters adjoining the southerly boundary of said claim are subject to rise and fall, dependent upon direction and force of winds, and that with heavy on-shore winds (southerly winds) the waters of Bering Sea are driven up across mean high-tide line over a portion of the surface of said Combers Right placer for short periods of time, and on account of such excessive flooding at various intervals, it is impracticable to place expensive mining machinery upon said Combers Right placer with which to work and mine said claim, or without great risk of loss and damage to such improvements and equipment during on-shore storm periods and excessive flooding.

"That a precipitous bluff rises from the water's edge adjoining and east of No. 1 Daniels Creek placer and Combers Right claim, and on account of the excessive flooding of sea waters as aforesaid, there is no place on said Combers Right placer for the setting of hoists and the erection of aerial tram and power line, with attendant masts, guy lines, deadmen, and the running of cables and use of equipment and power for the operation of such aerial tram, and to permit of maintaining the same and keeping it in repair, nor for the stable fixing, anchoring, and fastening of the northerly termini of said aerial tram and power line, all of which are necessary for operation, working, and mining said Combers Right placer, and that the surface rights and right of way hereinafter described, upon, over, across, and along the specific area hereinafter described is necessary for such purposes and the only place available therefor, and without which, said Combers Right placer cannot be successfully mined. * * *

"That the uses to which said tract is to be applied are to be temporary and constitute an easement only, in and upon, over, across, and along said tract with the right of ingress and egress thereto and therefrom, and for constructing and maintaining thereon an aerial tram and powerline with power, together with the necessary equipment to permit of operating, maintaining, and keeping the same in repair, and using the same on said area in mining Combers Right placer and the land and shoal water between low and mean high tide on the shore of Bering Sea adjoining said claim, for gold and other precious metals; that said user may include aerial tram, with mast set within 10 feet of the southerly boundary line of said tract, and not to exceed three cableway guy lines and three accompanying buckle guy lines leading from said mast to deadmen buried within said area as may be necessary to support said mast, and together with hoisting engine and cables leading therefrom to said mast and on to said Combers Right placer and the area to be mined by plaintiffs, together with right of way over and across said area and leading therefrom to said Combers Right placer for said aerial tram and necessary equipment to operate, maintain, and keep the same in repair."

On the hearing of the application for the appointment of commissioners to assess damages, the court below found that the use to which the property was to be applied was a use authorized by law, that the taking was necessary to such use, and commissioners were appointed accordingly. The order thus made has been brought to this court for review by appeal and writ of error. The appellees and defendants in error have moved to dismiss on the ground that the order thus made is not a final one.

Thomas R. Lyons and Ira D. Orton, both of Seattle, Wash., for appellant and plaintiff in error.

Geo. D. Schofield, of Nome, Alaska, for appellees and defendants in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). [1] The Supreme

Court has repeatedly held that orders such as this are not final and cannot be reviewed by writ of error. Luxton v. North River Bridge Co., 147 U. S. 337, 13 S. Ct. 356, 37 L. Ed. 194; Southern R. Co. v. Postal Telegraph Co., 179 U. S. 641, 21 S. Ct. 249, 45 L. Ed. 355. The reason for the rule is obvious: "The case is not to be sent up in fragments by successive writs of error." Luxton v. North River Bridge Co., supra. This rule should no doubt obtain here, unless there is some statutory provision to the contrary. Section 636 of the Compiled Laws of Alaska, relating to eminent domain, provides:

"The plaintiff or defendant or any party interested in the proceedings can appeal to the United States Circuit Court of Appeals for the Ninth Circuit from any finding or judgment made or rendered under this chapter, as in other cases."

[2] In the opinion of the writer the allowance of a writ of error to review the final judgment would fully satisfy the requirements of this section, thus making it harmonize with other legislation of Congress relating to the appellate jurisdiction of the federal courts. But, in Van Dyke v. Midnight Sun Mining & Ditch Co. (C. C. A.) 177 F. 85, this court held that the provision in question was taken from the Code of Civil Procedure of Montana, and that the Supreme Court of that state had construed it as permitting or allowing the review of an interlocutory order such as this. Whatever doubt we might entertain as to the proper construction of the statute if the question was an open one, we do not now feel that we would be justified in overruling that decision. The question is one of no general importance, aside from the fact that it goes to the jurisdiction of the court, because it would seem to matter but little to the parties whether the order is reviewed now or by writ of error to the final judgment. And if the local statute conferred the right of review, as was held in the Van Dyke Case, it has not been superseded or repealed by subsequent general legislation. United States v. Winslow, 227 U. S. 202, 33 S. Ct. 253, 57 L. Ed. 481; Abbate v. United States (C. C. A.) 270 F. 735. The motion to dismiss is therefore denied.

While the eminent domain statute of Alaska authorizes the taking of private property for roads, tunnels, ditches, flumes, pipes, and dumping places for working mines and outlets, natural or otherwise, for the flow, deposit, or conduct of tailings or refuse matter from mines, and sites for reservoirs necessary for collecting and storing water, the only provisions that could at all authorize the taking in this case are to be found in subdivision 10 of section 633 of the Compiled Laws of Alaska, and the Act of April 28, 1913 (Session Laws of Alaska 1913, p. 118). The former provides that the right of eminent domain may be exercised in behalf of "tramway lines." The latter provides that the use of water for mining, power, and municipal purposes, and the use of pole and tower lines for telephone and telegraph wires for aerial trams, and for the transmission of electric light and power by whomever utilized, are each and all declared to be beneficial to the public, and to be a public use, within the meaning of the eminent domain statute; that rights of way across private property, whenever the same shall be shown to be necessary for the operation of the mine or other project in connection with which it is intended to be used, may be condemned and taken therefor in the manner as laid down in the Alaska Code, and all proceedings to enforce the rights thus granted shall be in accordance therewith; that the right of way for which provision is thus made shall extend only to a right of way along, upon, and across the surface of the lands to be condemned and a strip thereof of sufficient width to permit of the construction thereon of such ditch, flume, pipe line, canal, or other means for conveying water as shall be adequate for the purposes intended, or for the setting of poles or the construction of towers upon which to string wires for telephone and telegraph lines and lines for the transmission of electric light or power for the operation of aerial trams and to permit of maintaining the same and keeping it in repair, and that all laws in conflict therewith are repealed.

[3, 4] It is quite manifest to us that these statutes do not authorize the taking of private property for any such use as is here contemplated. The statutes only authorize the taking of private property for rights of way for pole and transmission lines and rights incidental thereto, or, in other words, "for the setting of poles or the construction of towers upon which to string wires for telephone and telegraph lines, and lines for the transmission of electric light or power for the operation of aerial trams and to permit of maintaining the same and keeping it in repair." In this case the main purpose of the taking as appears from the allegations of the amended complaint and more particularly from the findings of the court, is to obtain a site for plant and equipment to operate the mine which cannot be maintained on the Combers Right claim because of the

periodical 'inflow of sea water. Whether the Legislature could authorize the taking of private property for any such purpose we need not inquire because it has not done so. Such statutes are universally construed strictly, and there, is an additional reason for such construction where a different construction would render the act of doubtful validity. 20 C. J. 534; Warm Springs Irr. Dist. v. Pacific Live Stock Co. (C. C. A.) 270 F. 560. The order in question must therefore be reversed.

The decision of this question would seem to be decisive of the case and we deem it unnecessary to consider other questions discussed in the briefs of counsel, such as the right of an administrator to maintain an action of this kind. However, if the plaintiffs should elect to claim only such rights as they are entitled to claim under the law, after the case is remanded, the latter question is worthy of serious consideration.

Reversed and remanded to the court below for further proceedings in accordance herewith.

DIETRICH, Circuit Judge (dissenting). If I rightly understand the meaning of the language used in the majority opinion, I am unable to concur in the conclusion that "the main purpose of the taking * * * is to obtain a site for a plant and equipment to operate the mine." As I read the record, the mining plant proper is, and is to remain, upon the plaintiffs' claim. The site sought on defendant's property is to be used only for one end of the aerial tram, with the incident power facilities requisite for its operation, referred to as a hoist. The measure of the use authorized is, of course, to be found in the order or interlocutory judgment. As therein defined, the uses, and the only uses, to which the plaintiffs are authorized to devote the site, are "to maintain and construct thereon an aerial tram and power line, with power, together with the necessary equipment to permit of operating, maintaining and keeping the same in repair, and using the same on the area * * * and that said user may include the erection of an aerial tram, with mast set within ten feet of the southerly boundary line of said tract; and not to exceed three cableway guy lines and three accompanying buckle guy lines leading from said mast to deadmen buried within said area as may be necessary to support said mast, and together with hoisting engine and cables leading therefrom to said mast."

Apparently, therefore, but two things are to be placed upon the condemned area, a mast with its necessary stays and a hoisting engine. The mast, as I understand, is simply the end post or member of the aerial tram, and being an integral part thereof, is clearly within the statute. Apparently the hoisting engine is a necessary appurtenance to the operation of the tram, and, if so, I am inclined to think it also is within the purview of the statute. Plaintiff in error has not brought up the evidence upon which the court acted, and hence the precise function of the engine or hoist or its relation to the tram line is left in doubt.

I therefore think the order should be affirmed. But, if it is reversed, the lower court should be advised more specifically of the views of this court touching the scope of the statute. And I also think we should rule upon the other questions submitted, by which defendant challenges the right of plaintiffs to invoke the statute at all, or to have condemnation for any purpose. Otherwise, if plaintiffs proceed with the suit, I fear it will be found that but little, if any, progress has been made by its appeal, toward a final determination of the controversy.