## STOVER v. DISTRICT OF COLUMBIA.

### No. 21.

Municipal Court of Appeals for
District of Columbia.

Dec. 29, 1942.

Rehearing Denied Jan. 11, 1943.

Cornelius H. Doherty, of Washington, D. C., for appellant.

Vernon E. West, Principal Asst. Corporation Counsel, and Milton Korman, Asst. Corporation Counsel, both of Washington, D. C. (Richmond B. Keech, Corporation Counsel, of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Appellant was convicted in the Municipal Court of a violation of Section 39 of the Act of October 9, 1940, Public No. 824, 76th Congress, c. 790, subc. 2, 54 Stat. 1080, D.C.Code 1940, § 35—1342, which prohibited the conduct of insurance business by an unauthorized company; and, likewise, prohibited any person from directly or indirectly negotiating for, or soliciting applications for policies of, or for membership in, any company which is not authorized to do business in the District. The company for which it was charged appellant solicited such insurance was the National Hospital Service Society, Inc. That company, by permits secured from the office of the Superintendent of Insurance, enjoyed the privilege of conducting its business for the years 1935, 1936, 1937, 1938, and 1939, the last permit expiring on April 30, 1940, on which date it lost its right to continue in business. The charge

was that the defendant had directly or indirectly solicited applications for policies of, or for membership in, said company between the dates of November 9, 1940, and October 8, 1941, in violation of the statute mentioned.

Trial was by jury and consumed an entire week. A record of the proceedings is before us in the form of several hundred pages constituting the complete stenographic transcript of all the proceedings below. From the record the following appears: Appellant became connected with the society early in 1938 at the instance of the then Superintendent of Insurance for the District of Columbia, the society being then in bad financial condition. In course of time he and his family invested approximately $40,000 in an effort to rehabilitate the society. In place of the former directors, who resigned, appellant installed his father, his mother, and several of his brothers. The society made a contract with him whereby he was to receive 35% of the premiums received by the society. He claimed that he received "not a nickel" of any of the premiums later collected. The society had about 4,000 family members, and engaged the services of many contact men, "soliciting members," or salesmen. It engaged in an extensive advertising and soliciting campaign through its salesmen and, also, through the medium of thousands of business reply cards which were distributed weekly by hand from door to door.

Although appellant defended on the ground that he had taken no part in negotiating for, or soliciting, business for the society, there was testimony by a number of witnesses that he attended and presided over meetings of the soliciting staff, gave "pep talks" to them, and frequently announced contests among the salesmen and offered prizes for their work; also, that he sat on the board of directors, passing on applications for policies, as well as claims thereunder.

Appellant complains of these alleged errors: (1) Refusal to grant a continuance; (2) error in admission and exclusion of evidence; (3 and 4) refusal to direct a verdict on the Government's case and on the whole case; (5) refusal to grant a requested instruction; (6 and 7) refusal to grant a motion for new trial and to subpoena the jurors for examination in connection with said motion.

■ I Appellant contends that the trial judge should have continued the case pending the trial of an injunction suit which the society had brought against the District of Columbia and the Superintendent of Insurance to restrain them from interfering with its business. We think the trial judge ruled correctly that the criminal proceedings should not be suspended merely because of the pendency of the injunction suit. If such a practice were followed, penal statutes could be vitiated and prosecutions delayed, perhaps indefinitely.

■ II The contention concerning admission and exclusion of evidence is rather general in its nature. We have examined the entire record of testimony and find that the court below carefully followed the rules of evidence, in line with the nature of the charge that the appellant had directly or indirectly solicited membership in the society. All the evidence admitted over objection had a direct bearing on that question. As to evidence excluded, the principal complaint in the brief is addressed to the refusal to permit a showing that the society once had a permit to do business as a fraternal organization. That was not only immaterial but could not have changed the legal aspects of the case, because fraternal organizations were specifically included in the statute on which the charge was based.

■ III and IV Appellant insists that he was not guilty as a matter of law and that the trial court should have so ruled at the close of the Government's case and on the whole evidence. He bases this contention upon the fact that there was no showing that he had at any time personally solicited insurance for his society, and that his only acts were in his capacity as secretary and treasurer. The trial judge conceded that there was no evidence that the defendant had directly solicited any one, and the record contains no showing of personal solicitation by him in the sense that is generally understood by the term; but the record does reveal substantial evidence, including that of the defendant himself upon his cross-examination, from which the jury could have found that he was the directing head of the society, and that there was extensive advertising and soliciting under his direct management, inspiration, and exhortation.

■ Nor could appellant be heard to defend on the ground that his society had in previous years been granted permits to do business. Such permits were not perpetual in their nature, and this was expressly ruled by the District Court of the United States in a suit which the society brought against the Superintendent of Insurance, seeking by mandatory injunction to require the issuance of a permit. In that case the court held that its license was not a "perpetual or perennial license." [1] On appeal the United States Court of Appeals for this District affirmed that decision.[2] The court said in part:

"The District Court dismissed appellant's complaint for a mandatory injunction requiring appellee, the Superintendent of Insurance of the District of Columbia, to renew appellant's permit to do an insurance business as a fraternal beneficial association. The court found that appellant was not qualified under the statute. Appellant does not question that finding, but contends that appellee is estopped to refuse to renew the permit. This argument rests on the proposition that the persons now in control of appellant have invested their time and money in reliance on permits, now expired, which were issued to appellant by appellee's predecessors in office.

"No doubt appellee's predecessors acted from the best of motives, but they misunderstood and violated the statute. Appellee should not be required to repeat their illegal acts. * * * It would be exceedingly prejudicial to the public interest to permit appellant to carry on an insurance business without the safeguards which the statute requires. * * *"

This effectively disposes of the contention that the Superintendent of Insurance had no right to withhold the permit or that the society, or the appellant, could continue to do business without such permit.

■ V Appellant offered a single instruction, which read: "The jury is instructed that if you find from the evidence that the defendant W. H. M. Stover did not, directly or indirectly, *personally* solicit membership in the National Hospital Service Society, Inc., then your verdict should be for the defendant." (Italic supplied.)

The instruction was refused, and we think properly. If the appellant's position were correct, the officer of a corporation could not be held guilty of a violation of law for any of his acts as officer of such corporation. That is not the law. In United States v. Winslow, D.C., 195 F. 578-581, affirmed 227 U.S. 202, 33 S.Ct. 253, 57 L.Ed. 481, the court said: "The indictment, however, expressly charges them as actors, and two fundamental principles are thoroughly settled. One is that neither in the civil nor the criminal law can an officer protect himself behind a corporation where he is the actual, present, and efficient actor; and the second is that all parties active in promoting a misdemeanor, whether agents or not, are principals."

And so, also, in Kelly v. United States, 6 Cir., 258 F. 392-401, certiorari denied, 249 U.S. 616, 39 S.Ct. 391, 63 L.Ed. 803, wherein the court said: "And it is a rule of the criminal law as well as the civil that corporate agencies cannot shield themselves behind the corporation, where they are the actual and efficient actors in committing a fraud or an offense." (Citing cases.)

To require the District to prove that the appellant personally solicited membership would impose a rule which is not only opposed to the decided cases but also plainly out of line with reason and everyday experience. Certainly the Congress never intended that liability should be limited to those who personally do the soliciting and that those in charge of the active management of such a company should be permitted to escape.

■ VI and VII On the motion for a new trial it was contended that the prosecuting attorney just prior to the trial was seen shaking hands with one of the jurors who later became foreman, and was also seen talking to him on a number of occasions in the corridor of the court house during court recesses; and, further, that the prosecutor was seen talking to a number of the jurors in the corridor on various occasions during the trial. This showing was made for the purpose of establishing that the defendant had not received a fair trial and that the particular juror had answered untruthfully on his preliminary examination the question as to

---

[1] Bailey, J., in Civil Action No. 7036, U.S. District Court for the D.C., June 10, 1941.

[2] National Hospital Service Society, Inc. v. Jordan, App.D.C., 128 F.2d 460, decided May 28, 1942.

whether any members of the panel were acquainted with the prosecutor. Testimony of several witnesses, including the prosecutor, was taken and the trial judge devoted parts of three days to inquiring into the charge. The prosecutor denied knowing the juror in question and, while he did not unequivocally deny having shaken hands with him, gave it as his best recollection that he had not done so, and emphatically denied that he had any personal acquaintance with him or any of the jurors, or that he had discussed any phase of the case with any juror. He insisted that any talks he had with jurors were only polite chats when they were all smoking in the corridors during recesses. After a very careful and lengthy inquiry, the trial judge announced that he could not attach any credence to the charge made. He refused appellant's request to summon the twelve jurors into court for examination. This last ruling we think was proper, for the court had before him not only affidavits but also very full testimony touching on the important question presented. There is authority that issues of fact presented upon a motion for a new trial may be determined on affidavits alone.[3] We think, therefore, that there was no abuse of discretion in refusing to summon the jurors into court or in overruling the motion for a new trial upon the showing made.

█ It cannot be too strongly urged that situations like this be avoided in the future. Important as it is that justice be done, it is equally important that the appearance and atmosphere of justice be carefully preserved, not only within the courtroom itself but in every contact that prosecutors, counsel, parties, or witnesses may have with jurors, wherever they may encounter each other while a trial is in progress. We think a special responsibility rests upon the prosecutor, for he is a public officer, acting in a quasi judicial capacity, and jurors are very apt to regard him as unprejudiced, impartial, and as occupying a different position from defense counsel. He usually spends every working day in court and is thrown into almost constant contact with jurors in and around the courtroom. From this closer and more constant pro-

pinquity, there can easily arise a closer relationship than is had by defense counsel who may come into conduct with the jurors only once. In this case the record reveals no tampering with, or attempting to influence, the jury. It was undoubtedly an innocent exchange of greetings between a too-friendly juror and a too-affable prosecutor. Innocent as it was, however, it is easy to understand that it would give rise to misgivings on the part of a defendant and form the basis for the kind of charge that has here been made. The charge was found by the trial judge to be without foundation in fact. We find it also to be without foundation in law. The two cases cited by appellant[4] are far different from this one, for in both of said cases there was evidence of long automobile rides by a juror with plaintiff and plaintiff's witness. We have found no case where a new trial has been awarded upon a showing such as this. On the contrary, the law is clear that unless a sinister design has been made apparent, an exchange of casual greetings between counsel and a juror will not suffice to avoid the verdict. 2 Thomp. on Trials, p. 2559, and cases cited; Alpena Tp. v. Mainville, 153 Mich. 732, 117 N.W. 338; Central of Georgia Ry. Co. v. Hammond, 109 Ga. 383, 389, 34 S.E. 594; Hilton v. Southwick, 17 Me. 303, 35 Am.Dec. 253; Vollrath v. Crowe, 9 Wash. 374, 37 P. 474; Ford v. Holmes, 61 Ga. 419; Louisville & N. R. Co. v. Turney, 183 Ala. 398, 62 So. 885-888; St. Louis & S. W. Ry. Co. v. Ellenwood, 123 Ark. 428, 185 S.W. 768-773.

To avoid costly mistrials and retrials and situations like this, prosecutors should be constantly on guard lest any word, greeting, or casual conversation, however innocent, lend itself to suspicion or be subject to misunderstanding. The Municipal Court itself can help by explaining to each new group of jurors the sacredness of their trust, and warning them of the importance of avoiding any improper contact with counsel, parties, or witnesses while cases are in progress. Defendants in criminal cases (and, indeed, parties in civil cases as well) are entitled to come into court with full confidence, not only that they will receive complete justice

---

[3] Hillman v. United States, 9 Cir., 1911, 192 F. 264, 272, certiorari denied 1912, 225 U.S. 699, 32 S.Ct. 834, 56 L. Ed. 1263; Chetkovitch v. United States, 9 Cir., 1931, 53 F.2d 26. Cited in Ewing

v. United States, U.S.App.D.C., 135 F.2d 633, decided December 1, 1942.

[4] Chicago v. Eggers, 214 Iowa 710, 243 N.W. 193; Shefelker v. First National Bank, 212 Wis. 659, 250 N.W. 870.

according to the letter of the law, but that there will be no word or gesture to cast the·slightest doubt upon the completely detached and impartial attitude of every juror. This is infinitely more important than mere etiquette.

Affirmed.